16 P.3d 849

STATE of Hawai'i, Plaintiff–Appellee,

v.

Alfred TOPASNA, Defendant–Appellant.

No. 22606.

Intermediate Court of Appeals of Hawai'i.

Nov. 27, 2000.

Rose Anne Fletcher, Deputy Public Defender, on the briefs, for defendant-appellant.

Mangmang Qiu Brown, Deputy Prosecuting Attorney, City and County of Honolulu, on the briefs, for plaintiff-appellee.

WATANABE, Acting C.J., LIM and FOLEY, JJ.

Opinion of the Court by LIM, J.

In his appeal of the circuit court of the first circuit's May 21, 1999 judgment, guilty conviction and sentence, Defendant–Appellant Alfred Topasna (Topasna) contends that the court abused its discretion in denying his motion to withdraw his guilty pleas.

Throughout his change-of-plea colloquy with the court, Topasna was extremely hesitant and reluctant to change his pleas. Topasna changed his mind immediately after changing his pleas and the next day told his attorney to move to withdraw the pleas. During the hearing on his motion, Topasna steadfastly maintained his innocence.

Upon our review of the record, we conclude that the court, through its change-of-plea colloquy with Topasna, ensured that his guilty pleas were nonetheless knowing, intelligent and voluntary. In doing so, we decide that Topasna's pleas were indeed knowing, intelligent and voluntary, the above circumstances notwithstanding. Hence, we hold that the court did not abuse its discretion in

denying his motion to withdraw his guilty pleas.

We therefore affirm the May 21, 1999 judgment.

## I. BACKGROUND.

On May 27, 1998, Topasna was indicted for various acts of sexual penetration and sexual contact with his girlfriend's daughter over a span of about four-and-a-half years.

The first two counts of the indictment charged him with sexual assault in the first degree, in violation of Hawai'i Revised Statutes (HRS) § 707–730(1)(b), for sexual penetration of the female when she was less than fourteen years old. Sexual assault in the first degree is a class A felony, HRS § 707–730(2), which carries a mandatory indeterminate term of imprisonment of twenty years. HRS § 706–659.

The third and fourth counts of the indictment charged him with sexual assault in the second degree, in violation of HRS § 707–731(1)(a), for sexual penetration by compulsion. Sexual assault in the second degree is a class B felony, HRS § 707–731(2), which carries an indeterminate term of imprisonment of ten years. HRS § 706–660.

The fifth count of the indictment charged him with sexual assault in the fourth degree, in violation of HRS §§ 707–733(1)(a), for sexual contact by compulsion. Sexual assault in the fourth degree is a misdemeanor, HRS § 707–733(2), which carries a maximum prison term of one year. HRS § 706–663.

The last count of the indictment charged him with sexual assault in the third degree, in violation of HRS §§ 707–732(1)(e), for sexual contact by strong compulsion. Sexual assault in the third degree is a class C felony, HRS § 707–732(2), which carries an indeterminate term of imprisonment of five years. HRS § 706–660.

On March 16, 1999, the day jury trial commenced in his case, Topasna pled guilty as part of a plea agreement with the State.

He pled guilty to reduced charges of sexual assault in the second degree in the first two counts of the indictment, and as charged in the following four counts. The deal with the State provided for ten-year indeterminate terms of imprisonment and a five-year indeterminate term of imprisonment, all terms to run concurrently. The State also agreed not to seek extended terms of imprisonment. During the hearing, the trial court bound itself to the plea agreement pursuant to Hawai'i Rules of Penal Procedure (HRPP) Rule 11(e)(1). After Topasna entered his guilty pleas, the court set sentencing for May 21, 1999.

On March 24, 1999, Topasna moved to withdraw his guilty pleas. The supporting declaration of counsel averred that Topasna had asked him to move for withdrawal the day after the change of pleas.

At the April 9, 1999 hearing on the motion, Topasna testified that he had changed his mind about changing his pleas as soon as he walked out of the courtroom on March 16, 1999. He called his attorney the next day about withdrawing the pleas.

When asked why he now wanted to go to trial, Topasna responded, "Well, 'cause I'm innocent for those charges." Topasna went on to explain his state of mind at the change-of-plea hearing. He told the trial court that he was very tired that day from lack of sleep. He had been kept awake and nauseated for two weeks before the hearing by incessant noise and cigarette smoke from the inmates in his holding unit. In addition, the holding unit had been freshly painted. As a result, he was confused, sick and tired at the hearing.

He also testified that he was rushed into changing his pleas to guilty. He claimed that he had not seen a copy of the indictment until the day of the hearing. "I didn't know what was I charged for. I mean, the whole charges[.]" He also said he felt "defeated" due to the motion court's denial of a key evidentiary motion he had filed. As a result, he was not prepared to go to trial that day and presumably, saw no way out but to change his pleas to guilty.

On April 30, 1999, the trial court filed its findings of fact, conclusions of law and order denying Topasna's motion to withdraw his guilty pleas.

Topasna filed for reconsideration of that decision. The trial court denied the motion

for reconsideration at the May 21, 1999 hearing on the motion. Immediately thereafter, the court sentenced Topasna pursuant to the plea agreement. Judgment was entered the same day. Topasna filed his notice of appeal from the May 21, 1999 judgment on June 18, 1999.

The ten months between indictment and change of pleas saw a number of motions filed by Topasna. The evidentiary motion referred to by Topasna during the hearing on his motion to withdraw his guilty pleas was a Hawai'i Rules of Evidence (HRE) Rule 412[1] motion. As originally filed on December 11, 1998, the motion sought to admit evidence at trial "under HRE [Rule] 412(b)(2)(B) of the complainant's '[p]ast sexual behavior with the accused ... upon the issue of whether the alleged victim consented to the sexual behavior with respect to which rape or sexual assault is alleged.'" The offer of proof in the motion asserted that "[t]he police reports indicate that the complaining witness ... had some form of injury (healed laceration) to her private area.... [Topasna] intends to illicit [sic] evidence that the complaining witness is sexually active through the complaining witness, as well as other possible [sic—presumably, witnesses]."

In a January 7, 1999 filing, however, Topasna amended the object and the basis of his HRE Rule 412 motion. The object of the motion was now "evidence under HRE [Rule] 412(b)(1) as well as (2)(A) of the complainant's '[p]ast sexual behavior with persons other than the accused ... upon the issue of whether the accused was or was not, with respect to the alleged victim, the source of semen or injury.' Defendant will not intro-

1. Hawai'i Rules of Evidence Rule 412 (Supp. 1999) provides, in pertinent part:

(b) Notwithstanding any other provision of law, in a criminal case in which a person is accused of a sexual offense, evidence of an alleged victim's past sexual behavior other than reputation or opinion evidence is not admissible to prove the character of the victim to show action in conformity therewith, unless the evidence is:

(1) Admitted in accordance with subsection (c)(1) and (2) and is constitutionally required to be admitted; or

(2) Admitted in accordance with subsection (c) and is evidence of:

(A) Past sexual behavior with persons other than the accused, offered by the accused upon the issue of whether the accused was or was not, with respect to the alleged victim, the source of semen or injury; or

(B) Past sexual behavior with the accused and is offered by the accused upon the issue of whether the alleged victim consented to the sexual behavior with respect to which sexual assault is alleged.

(c)(1) If the person accused of committing a sexual offense intends to offer under subsection (b) evidence of specific instances of the alleged victim's past sexual behavior, the accused shall make a written motion to offer the evidence not later than fifteen days before the date on which the trial in which the evidence is to be offered is scheduled to begin, except that the court may allow the motion to be made at a later date, including during trial, if the court determines either that the evidence is newly discovered and could not have been obtained earlier through the exercise of due diligence or that the issue to which the evidence relates has newly arisen in the case. Any motion made under this paragraph shall be served on all other parties and on the alleged victim.

(2) The motion described in paragraph (1) shall be accompanied by a written offer of proof. If the court determines that the offer of proof contains evidence described in subsection (b), the court shall order a hearing in chambers to determine if the evidence is admissible. At the hearing, the parties may call witnesses, including the alleged victim, and offer relevant evidence. Notwithstanding subsection (b) of rule 104, if the relevancy of the evidence that the accused seeks to offer in the trial depends upon the fulfillment of a condition of fact, the court, at the hearing in chambers or at a subsequent hearing in chambers scheduled for this purpose, shall accept evidence on the issue of whether the condition of fact is fulfilled and shall determine the issue.

(3) If the court determines on the basis of the hearing described in paragraph (2) that the evidence that the accused seeks to offer is relevant and that the probative value of the evidence outweighs the danger of unfair prejudice, the evidence shall be admissible in the trial to the extent an order made by the court specifies evidence that may be offered and areas with respect to which the alleged victim may be examined or cross-examined.

. . . .

(h) For purposes of this rule, the term "past sexual behavior" means sexual behavior other than the sexual behavior with respect to which a sexual offense or sexual harassment is alleged.

duce evidence under HRE Rule 412(b)(2)(B)." The amended offer of proof alleged that "[t]he police reports indicate that the complaining witness ... had some form of injury (healed laceration) to her private area. Med–Legal documents indicate that the complaining witness was sexually active. Counsel intends to illicit [sic] this information through the complaining witnesses [sic] as well as other possible sources. There is evidence that [the complaining witness] had at least one boyfriend who may have been the source of the injury."

At the January 8, 1999 hearing on the motion, the motions court denied the motion because "the Defense offer of proof is insufficient to proceed to a contested hearing involving live testimony." The motions court further concluded that "even if the Defendant's offer of proof is found adequate, this Court would find and conclude that the proffered evidence still does not reflect anything factual which would allow such prohibited evidence to be admissible at trial."

The trial court entertained motions in limine on March 15, 1999, the day before jury trial was to commence. At the beginning of that hearing, Topasna's attorney revisited the subject of the HRE Rule 412 evidence:

[DEFENSE COUNSEL]: Your Honor, we were hoping not to continue this case, just proceed to trial on this matter. But after thinking about the case further, discussing the case further with the witnesses, and in preparing a little bit more, it's become a little bit clearer that the [HRE Rule] 412 motion which was denied earlier is critical to the defense.

And the remedies—you know, we could have the trial court rule on it or we could file a motion for reconsideration of the [motions court's] ruling. Maybe some of the problems that [the motions court] had was perhaps with the offer of proof which was given, and she may not have specific details of what the proffered testimony was going to be and a more—a better—a clearer argument of why we actually needed the testimony.

And so I don't want to continue it really because my client's in custody. But because the issue is important to his de-

fense—it goes to the motive of the complaining witness. And I, you know, feel a little hamstrung or handcuffed a little bit what to do about this case.

In the same sense too, because there's a prior ruling by another Court of equal power, I didn't want this Court to feel—to just brush off the issue and think that this is law of the case already, I can't touch it up anymore. And for that reason, if the Court's going to have an inclination to that effect, I'm going to ask—I'm asking for a continuance in order to file a motion.

THE COURT: Okay. Well, I think we need to get into a little bit—at least a little bit of what your motion for reconsideration will be. What is it that you want to introduce at trial?

[DEFENSE COUNSEL]: Well, I mean, I tried to flush it out in the response. But basically, Your Honor, No. 1, we wanted to introduce testimony that [the complaining witness] went to a camp or thereabouts around March.

THE COURT: And she had sex with this boy from Kamehameha School?

[DEFENSE COUNSEL]: She may have had sex with this boy.

THE COURT: That's what you want to try to prove, right?

[DEFENSE COUNSEL]: Right. Before or afterwards, after she left home. So we don't really know because there's some physical evidence that says, hey, we got this injury here. The doctor can't say when it really was, when it really took place. It took seven days to actually—after she runs away from home to actually examine the girl. So we're stuck. They only got an injury in allegation that we cannot fit in to this other stuff that have led up to her running away and then her subsequently continuing to see this boy.

THE COURT: Okay. So you—[Ms. Prosecutor], are you going to introduce or is that evidence about the healing laceration—is that going to be elicited by the State?

[PROSECUTOR]: Yes, Your Honor.

THE COURT: To prove that [Topasna] caused it?

. . . .

[PROSECUTOR]: Yes, Your Honor. Specifically, according to HRE Rule 412, it's specific that that kind of evidence can only go to source of semen or injury. But in this case, the defense has failed to put forth an offer that satisfies what that rule requires. And [the motions judge] has denied the motion. So they are prohibited from introducing the victim having sex with anyone else and specifically this boy from Kamehameha Schools.

Because that hearing was sealed, there was evidence even investigated by the defense investigator that that was not so. And that was part of why their proffer failed.

. . . .

THE COURT: She didn't want to get caught doing what?

[DEFENSE COUNSEL]: She didn't want to get caught with the fact that she may have had sex with this boy during this camp.

Second of all, Your Honor, we already have this ongoing resentment that she may have against [Topasna]. And here he is again interfering in my life, telling my mother what I'm doing. And my mother is trying to interfere with me; she wants me to be examined.

I mean, I don't have to—to me, that shows clear motivation for explaining to a jury, you know, what may have happened or what happened on that day. And it's so close to the time that she actually says all of a sudden, hey, I've been raped, when this has been going on supposedly all these years.

THE COURT: Let me ask you—tell me if I'm wrong. Your client confronted the complainant and accused her of various things. I guess one of 'em was having sex with somebody. And she got angry with him and so she made up these allegations about him. Is that a short, simple way of stating your position?

. . . .

[DEFENSE COUNSEL]: There's other reasons that go along with that, but I think it's critical.

. . . .

THE COURT: And you know, the injury stuff, [Ms. Prosecutor]—the rule is pretty clear if it's being offered to show the source of semen or injury. That's clearly one of the exceptions under [HRE Rule] 412. Now, you folks' want to show that there was this injury; right? And you want to point the finger at the defendant as being the cause of that injury. And I think that it's unfair if we don't allow [defense counsel] to show that it might have been somebody else if it fits the factual situation. You know, if you don't bring in that injury evidence, then there's not a problem. None of this can come in. You understand what I'm saying?

. . . .

So if—and unless your doctor can rule out this laceration having been caused within, you know, from the last week in March till April 9th, when she was examined—if your doctor can rule it out, then maybe we can rule out the defense evidence. But if he can't—that is, that the laceration could have been caused during the ROTC camp, then I think [defense counsel] has a right to present the evidence no matter how weak it is. I mean—

Immediately after the foregoing discussion, the trial court sent Topasna and the attorneys to the motions court so that it could entertain an oral motion to reconsider its earlier denial of Topasna's HRE Rule 412 motion. The motions court denied the oral motion for reconsideration. The trial court then finished hearing the motions in limine.

The next day, in the middle of *voir dire*, Topasna notified the trial court that he wanted to change his pleas to guilty.

## II. ISSUES PRESENTED.

On appeal, Topasna challenges the following findings of fact (FsOF) and conclusions of law (CsOL) underlying the trial court's order denying his motion to withdraw his guilty pleas:

FOF 6: The manner and content [Topasna's] Defendant's responses to the Court's questions and the overall charac-

ter of his conduct during the change of plea hearing demonstrate that [Topasna] was thinking clearly at the time.

FOF 7: There is no credible evidence that [Topasna] was confused or that his ability to understand the nature of the charges or the consequences of his guilty pleas was impaired to any degree when the pleas were entered.

FOF 9: At the conclusion of this Court's extensive questioning and the change of plea hearing, this Court found that [Topasna] voluntarily entered his pleas with an understanding of the charges against him and the consequences of his pleas. This Court found a factual basis for his pleas.

FOF 10 There is no credible evidence that [Topasna's] guilty pleas were not knowingly, intelligently, and voluntarily entered.

COL 5 [Topasna] has failed to prove that he did not knowingly, intelligently, and voluntarily enter his guilty pleas.

Topasna also challenges on appeal, the following FsOF and CsOL underlying the trial court's denial of his motion for reconsideration of its denial of his motion to withdraw his guilty pleas:

FOF/COL 2 This Court again finds and concludes that although [Topasna] was hesitant, the Court does not believe that [Topasna] was confused. There is no question that [Topasna] was not confused.

FOF/COL 3 The fact that [Topasna] changed his mind about pleading guilty soon after the change of plea hearing is not a fair and just reason for this Court to allow [Topasna] to withdraw his guilty pleas.

However, Topasna's arguments on appeal do not track the challenged FsOF and CsOL in any comprehensible way. Instead, Topasna mounts a diffuse attack on the single issue he presents on appeal: "Whether the lower court abused its discretion in failing to grant Defense's Motion to withdraw Guilty Pleas?"

## III. DISCUSSION.

A defendant does not enjoy an absolute right to withdraw his or her guilty plea. *State v. Merino*, 81 Hawai'i 198, 223, 915 P.2d 672, 697 (1996). HRPP Rule 32(d) (1999) provides that:

[a] motion to withdraw a plea of guilty or of nolo contendere may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence shall set aside the judgment of conviction and permit the defendant to withdraw his plea.

Accordingly, when the motion to withdraw guilty plea is made after sentence is imposed, the "manifest injustice" standard applies to the court's consideration of the motion. On the other hand, where, as here, the motion is made before the court passes sentence,

a more liberal approach is to be taken, and the motion should be granted if the defendant has presented a fair and just reason for his request and the [prosecution] has not relied upon the guilty plea to its substantial prejudice.

*Merino*, 81 Hawai'i at 223, 915 P.2d at 697 (citations omitted; brackets in the original).

Where the record pertaining to the motion to withdraw guilty plea is complete, as it is in this case, "[t]he defendant has the burden of establishing plausible and legitimate grounds for the withdrawal." *Id.* (citation and internal quotation marks omitted; brackets in the original); *Reponte v. State*, 57 Haw. 354, 361, 556 P.2d 577, 582 (1976) (defendant must carry this burden by a preponderance of the evidence). *Cf. Carvalho v. Olim*, 55 Haw. 336, 342–43, 519 P.2d 892, 896–97 (1974) (where the record is silent, it is presumed that the defendant did not voluntarily and knowingly enter his or her guilty plea and the burden is on the State to rebut that presumption).

If the defendant cannot carry the threshold burden of showing a "fair and just reason" for withdrawing the plea, the following issue of the State's detrimental reliance upon the plea is of no consequence. *Merino*, 81 Hawai'i at 223, 915 P.2d at 697.

■ The two fundamental bases for showing a "fair and just reason" for withdrawing a guilty plea are (1) that the defendant did not knowingly, intelligently and voluntarily waive the rights relinquished upon pleading guilty, or (2) that changed circumstances or new information justify withdrawal of the plea. *Id.* at 223–24, 915 P.2d at 697–98.

■ Where the first fundamental basis is concerned, as it is in this case, the defendant is entitled to withdraw the guilty plea if

(1) the defendant has not entered the plea knowingly, intelligently, and voluntarily; (2) there has been no undue delay in moving to withdraw the plea; *and* (3) the prosecution has not otherwise met its burden of establishing that it relied on the plea to its substantial prejudice.

*Id.* at 224, 915 P.2d at 698 (italics in the original). In this case, Topasna moved with celerity to withdraw his guilty pleas. And the State does not argue that it detrimentally relied upon Topasna's pleas. Hence, the only relevant inquiry on this appeal is whether Topasna knowingly, intelligently and voluntarily entered his pleas of guilty.

■ Generally, we review the trial court's denial of a motion to withdraw guilty plea for abuse of discretion. *Id.* at 211, 915 P.2d at 685 ("An abuse of discretion occurs if the trial court has clearly exceeded the bounds of reason or has disregarded rules or principles of law or practice to the substantial detriment of a party litigant." (Citations and internal quotation marks omitted.))

■ In this case, however, our evaluation of the court's exercise of its discretion hinges solely upon the constitutional inquiry whether Topasna knowing, intelligently and voluntarily entered his pleas of guilty. This being so, the underlying and determining mode of review in this case is "*de novo, i.e.,* according to the right/wrong standard, based upon an examination of the entire record." *Id.* at 225, 915 P.2d at 699 (citation omitted).

HRPP Rule 11 (1999), specifically subsections (c) and (d) thereof, "implement[s] the constitutional requirement that a trial judge ensure that a ... plea be voluntarily and knowingly entered." *Merino,* 81 Hawai'i at 217, 915 P.2d at 691 (citations and internal quotation marks omitted). HRPP Rule 11 (1999) reads, in pertinent part:

(c) **Advice to Defendant.** The court shall not accept a plea of guilty or nolo contendere without first addressing the defendant personally in open court and determining that he understands the following:

(1) the nature of the charge to which the plea is offered; and

(2) the maximum penalty provided by law, and the maximum sentence of extended term of imprisonment, which may be imposed for the offense to which the plea is offered; and

(3) that he has the right to plead not guilty, or to persist in that plea if it has already been made; and

(4) that if he pleads guilty or nolo contendere there will not be a further trial of any kind, so that by pleading guilty or nolo contendere he waives the right to a trial; and

(5) that if he is not a citizen of the United States, a conviction of the offense for which he has been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States.

(d) **Insuring That the Plea Is Voluntary.** The court shall not accept a plea of guilty or nolo contendere without first addressing the defendant personally in open court and determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. The court shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from any plea agreement.

(e) **Plea Agreement.**

(1) *In General.* The prosecutor and counsel for the defendant, or the defendant when acting pro se, may enter into plea agreements that, upon the entering of a plea of guilty or nolo contendere to a charged offense or to an included or related offense, the prosecutor will take certain actions or adopt certain positions, including the dismissal of other charges and the

recommending or not opposing of specific sentences or dispositions on the charge to which a plea was entered. The court may participate in discussions leading to such plea agreements and may agree to be bound thereby.

(2) *Notice of Plea Agreement.* Any plea agreement shall be disclosed by the parties to the court at the time the defendant tenders his plea. Failure by the prosecutor to comply with such agreement shall be grounds for withdrawal of the plea.

(3) *Warning to Defendant.* Upon disclosure of any plea agreement, the court shall not accept the tendered plea unless the defendant is informed that the court is not bound by such agreement, unless the court agreed otherwise.

. . . .

(f) *Determining Accuracy of Plea.* Notwithstanding the acceptance of a plea of guilty, the court shall not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea.

The Hawai'i Supreme Court has parsed HRPP Rule 11:

In particular, HRPP 11(c), by its terms, is designed to insure that a defendant's guilty or nolo contendere plea is entered with knowledge and understanding of its consequences, while HRPP 11(d), by its terms, is similarly designed to ensure that a defendant's guilty or nolo contendere plea is entered voluntarily. HRPP 11(e) also relates on its face to guilty *and* nolo contendere pleas and prescribes the steps to be followed in disclosing to the court and memorializing for the record the terms of plea agreements between a defendant and the prosecution, as well as insuring, as appropriate, that the defendant understands that the court is not bound by the agreement. Pursuant to HRPP 11(f), . . . the court is prohibited from entering judgment upon a *guilty* plea if it is not subjectively satisfied that there is a factual basis for the plea. The court must satisfy itself that the conduct *which the defendant admits* constitutes the offense charged in the indictment [, complaint,] or information or an offense included therein to which the

defendant has pleaded *guilty.* While the factual basis may come from various sources, it must appear on the record. *Merino,* 81 Hawai'i at 217, 915 P.2d at 691 (citation omitted; italics and brackets in the original).

■ Examined without reference to Topasna's arguments on appeal, the colloquy conducted by the court, on its face, satisfied the mandates of HRPP Rule 11 (a copy of the transcript of the change-of-plea colloquy is attached to this opinion as Appendix A).

In accordance with HRPP Rule 11(c), the court addressed Topasna personally in open court. At the outset, the court established that Topasna was of middle age, had about nine-and-a-half years of formal education, was literate in English, was not under the influence of drugs or alcohol, was not being treated for any mental illness or emotional disability and was of clear mind.

Pursuant to HRPP Rule 11(c)(1), the court asked Topasna whether his attorney had explained the charges to him. Topasna replied, "Yeah, kind of." The court then detailed the nature of each charge to which Topasna offered his guilty plea and confirmed as to each charge that Topasna understood the charge. After explaining the individual charges to Topasna, the court sought further confirmation that he understood them: "And you've said that you understand the charges?" Topasna replied, "Now." The court then asked him if he had any questions regarding the charges, and he responded, "Not right now, I guess."

In accordance with HRPP Rule 11(c)(2), the court explained to Topasna the maximum penalty provided by law for each charge in the indictment, as well as the maximum aggregate penalty for all charges in the indictment. The court also set out the maximum penalties for the offenses to which Topasna was to offer his pleas under the plea agreement, and the maximum aggregate penalty provided for under the agreement. After each explanation, Topasna expressed his understanding.

The court also confirmed, pursuant to HRPP Rule 11(c)(3), that Topasna understood he had the right to plead not guilty and

454

to persist in that plea. In this connection, the court stressed that Topasna could demand a trial regardless of the strength of the evidence against him and that he would not be penalized for asserting his right to trial. The court explained that by offering his guilty pleas, Topasna would waive his right to trial such that no further trial would ensue. HRPP Rule 11(c)(4). Topasna indicated that he understood. As required by HRPP Rule 11(c)(5), the court advised Topasna of the consequences for aliens in the United States attendant upon conviction, and he said that he understood.

The court reiterated to the parties the terms of the plea agreement, HRPP Rule 11(e)(2), confirmed with Topasna that his guilty pleas arose out of the agreement, HRPP Rule 11(d), and that they were not the result of force or any other kind of pressure or any kind of promise other than the agreement, *id.*, and agreed to be bound by the agreement. HRPP Rule 11(e)(3).

As to the last of the HRPP Rule 11 requirements, under subsection (f), the court found that there was a factual basis for Topasna's guilty pleas.

This finding was based in part upon a guilty plea form signed by Topasna. The form contained the statement, "I plead guilty because, after discussing all the evidence and receiving advice on the law from my lawyer, I believe that I am guilty." The form further conceded, "There is evidence and factual basis in the police reports [which are not in the record] to sustain a conviction in these cases." The form was also signed by Topasna's attorney, certifying that he had explained the document to Topasna and believed that Topasna understood the document when he signed it.

The attorney also represented to the court that "obviously, if we look at the grand jury transcript [which is not in the record], which Mr. Topasna's had a chance to review, as well as the police report, which he's had a chance to review on more than one occasion, there's certainly factual basis in those documents that would support the conviction."

Following this representation, the prosecutor provided the court a detailed offer of proof of what the State's witnesses would testify to at trial, amounting to a *prima facie* case on each of the offenses. *Cf. State v. Teves*, 4 Haw.App. 566, 570, 670 P.2d 834, 837 (1983) (stating that "[w]hile the factual basis may come from various sources, it must appear on the record[,]" and in reviewing the factual basis for the defendant's guilty plea, resorting to factual admissions of the defendant in his guilty plea form and in a colloquy with the trial court; but not considering his attorney's reference to a summary of the offense in the pre-sentence report, because the report was not in the record); *Reponte*, 57 Haw. at 358–59, 556 P.2d at 581 (factual basis based only upon prosecutor's offer of proof found sufficient); *State v. Gomes*, 79 Hawai'i 32, 33, 897 P.2d 959, 960 (1995) (noting, without disapproval, that the sources of the factual basis offered in connection with the defendant's *nolo contendere* plea were the prosecutor's summary of the particulars of the offense, defense counsel's oral stipulation to the prosecutor's summary (but not that it was "absolutely accurate") and the defendant's statement in his no contest plea form that "there is a factual basis for the charge"); *Merino*, 81 Hawai'i at 219, 915 P.2d at 693 (in dictum, expressing the supreme court's belief that the prosecutor's detailed offer of proof alone would have satisfied HRPP Rule 11(f) if a guilty plea—and not a *nolo contendere* plea, which does not require a factual basis—had been at issue).

Entirely apart from the mandates of HRPP Rule 11, the supreme court has held that "[a] plea of guilty in itself is a conviction and a simultaneous waiver of several important constitutional guarantees—the privilege against self-incrimination, a trial by jury, and the confrontation of one's accusers." *Wong v. Among*, 52 Haw. 420, 425, 477 P.2d 630, 634 (1970).

In this connection, we observe the court advised Topasna that in pleading guilty, he would be giving up his right to remain silent. The court also explained the jury trial right to Topasna and informed him that he would be waiving that right as well. The court told him, in addition, that he was waiving his right to cross-examine the witnesses brought to testify against him. In each instance,

Topasna affirmed his understanding of the specific waiver he proposed to undertake in pleading guilty.

The court also informed Topasna that he was waiving several other extremely important rights by pleading guilty, confirming his understanding of his waiver in each of the following instances: the right to a unanimous verdict, the right to proof of guilt beyond a reasonable doubt, the right to present witness and to compel their attendance, the right to testify, and the right to an appeal.

Furthermore, the court went over with Topasna a few other important considerations not expressly implicated by HRPP Rule 11. For example, the court confirmed that Topasna had discussed with his attorney and understood the possible defenses in his case. The court also warned Topasna that the convictions to follow his guilty pleas would trigger the requirements and consequences of the sex offense registration and notification law, HRS chapter 846E.

As mentioned, Topasna signed a guilty plea form. In fact, he signed the form twice, once before the change-of-plea proceedings and once in open court. The first signature confirmed the preprinted statement that he had gone over the form with his attorney. The second signature similarly confirmed that the court had personally questioned him in open court to ensure that he understood the form before he signed it and that he knew what he was doing in pleading guilty. Topasna orally confirmed these representations at the beginning of his colloquy with the court. The balance of the form covered all of the advisements and considerations discussed above required for a knowing and voluntary waiver.

In the course of the colloquy, the court repeatedly assured Topasna that if he did not want to plead guilty, he could continue with the trial. The court also repeatedly emphasized that the decision—trial or change of pleas—was for him to make. And to promote his consideration of that decision, the court afforded Topasna a recess (which lasted about twenty minutes) to confer privately with his attorney.

Just before the court took Topasna's guilty pleas, it issued a final warning:

Well, [Topasna], you understand that once you enter your pleas in this case, you're not going to be allowed to take them back and go to trial? If you make up your mind now, that's it. You decide to take the plea agreement and you enter your guilty pleas today, it's going to be very, very difficult for you to withdraw your pleas. All right?

In conclusion, and again without reference to Topasna's points on appeal, it appears from the transcript of the change-of-plea hearing that the court fulfilled all applicable requirements in conducting the hearing and the colloquy. The transcript also indicates that, as a result, Topasna entered his guilty pleas knowingly, intelligently and voluntarily.

We now turn to Topasna's arguments on appeal, which attempt to cast doubt upon the foregoing conclusions. They are presented in a rambling, stream-of-consciousness format, and we attempt an organized discussion of them here.

Topasna's first category of complaints concerns the form and manner of the court's questioning during the change-of-plea colloquy.

He complains that the court utilized compound questions in its colloquy with him. In this connection, he cites several pages in the transcript, but does not specify the offending questions nor explain or argue why their form resulted in unaware or involuntary guilty pleas. Without discernible argument, we cannot and, under the law, need not address this complaint. Hawai'i Rules of Appellate Procedure (HRAP) Rule 28(b)(7) (1999) ("the appellant shall file an opening brief, containing ... [t]he argument, exhibiting clearly the points of fact and of law being presented, citing the authorities relied upon"); *CSEA v. Doe*, 88 Hawai'i 159, 174 n. 20, 963 P.2d 1135, 1150 n. 20 (App.1998) ("Appellant, however, fails to present discernible argument with respect to these allegations and this court, therefore, need not address those matters." (Citations omitted.)); *Bank of Hawai'i v. Shaw*, 83 Hawai'i 50, 52, 924 P.2d 544, 546 (App.1996) ("[Appellant's] appeal asserts numerous grounds but fails to

provide discernible argument or discussion on many of the points. We will disregard a point of error if the appellant fails to present discernible argument on the alleged error." (Citation omitted.))

We do not, in any event, see in the record any questions posed by the court in the disjunctive, which may have introduced an element of ambiguity or misunderstanding. Nor do we discern any questions of inordinate length or complexity. And we do not detect in Topasna's responses any problems in understanding the questions themselves.

Citing the same pages in the record, Topasna also complains that the court "did not give [him] proper inquiry before the court moved on in its HRPP Rule 11 colloquy." However, he argues only one instance, based upon the following excerpt from the transcript:

A [Topasna]. This the first time I seen these charges and the dates and the years that this happened. I've never seen this before.

Q [Court]. Okay. Do you have any questions about the counts, though?

A [Topasna]. Well—

Q [Court]. I'll tell you what, [Topasna], you know, it's up to you what you do in this case, My understanding is that the State has offered a plea agreement and you at least tentatively agreed to accept that plea agreement or vice versa. You offered to plead and they agreed to your offer. Whatever way it happened. But there's still a jury outside, and you can always go to trial.

You know, I need to know what you really want to do here today. And the first step is finding out whether you understand the charges. And you've said that you understand the charges?

A [Topasna]. Now.

Q [Court]. But do you have any questions about that? We need to know that you understand what you're being charged with.

A [Topasna]. Now I've seen what— that's the first time I've seen this.

Q [Court]. Okay.

A [Topasna]. But—

Q [Court]. Do you have any questions about the charges?

A [Topasna]. Not right now, I guess.

On the basis of the foregoing passage, Topasna charges that the court was "more preoccupied with the fact that the jury is waiting outside than assuring itself that [Topasna] completely understands the charges against him and the consequences of his pleas in relation to these specific charges."

He also notes that the court cut him off at two points in the foregoing passage, and argues that the court thus conveyed "that his questions are not worthy of being answered if they do not fall within the court's agenda." This had, he avers, a "chilling effect" on any requests for clarification he might have needed. He was, he concludes, "effectively prevented [from] working through the confusion."

█ Topasna's speculations regarding the court's "preoccupation" with a waiting jury are belied by the painstakingly careful and patient colloquy conducted by the court, spanning some twenty-four pages of transcript and covering just about every conceivable right waived or affected by Topasna's guilty pleas. Cognizant moreover of Topasna's hesitancy in offering his guilty pleas, the court afforded him a twenty-minute recess to confer privately with his attorney before continuing the colloquy and ultimately accepting his guilty pleas. These considerations also militate against any implication that the court had a dark "agenda."

Equally improbable is the suggestion that the court discouraged questions from Topasna by interrupting him at various points. The colloquy as a whole shows that Topasna was a most assertive and unabashed interlocutor throughout. In this particular instance, the court interrupted him simply because he was getting off the pertinent point, which was whether he understood the charges against him, not whether he had seen the indictment.

Immediately before the quoted passage, the court had gone over each charge, detailing its material elements and confirming that Topasna understood it. The court was at-

tempting to summarize his global understanding of the charges against him when the passage at issue occurred:

Q [Court]. All right. Do you have any questions about any of the counts?

A [Topasna]. First time I seen the dates of any of this—you know.

Q [Court]. Excuse me?

A [Topasna]. This the first time I seen these charges and the dates and the years that this happened. I've never seen this before.

Q [Court]. Okay. Do you have any questions about the counts, though?

A [Topasna]. Well—

Q [Court]. I'll tell you what [Topasna],

. . . .

If the court appeared a tad peremptory in this exchange, it is probably due to the fact that Topasna was being disingenuous in claiming confusion about the charges, specifically about the dates of the offenses. He had, after all, previously filed an unsuccessful motion for a bill of particulars requesting that the dates of the offenses—stated by range in the indictment and in the court's colloquy—be pinpointed, and had attended the hearing on the motion. He also admitted that he had seen the videotape of the grand jury proceedings in his case.

In another argument, the title of which states the requirement that a court must inform the accused of the penalties he or she faces in pleading guilty, Topasna instead appears to continue his scattered complaints about the form and manner of questioning by the court during the colloquy. But here again, we find nothing problematic about the form or manner of questioning. Two or three readings of the argument reveal, however, what appears to be its central preoccupation—that the court was not responsive to Topasna's dissatisfaction with the strength of his defense and his angst about the choices he faced.

■ True, the court refused to be sidetracked by Topasna's laments about the lack of evidence on his side and the unpalatable consequences of both his alternatives, preferring instead to continue its proper inquiry into the knowing, intelligent and voluntary nature of Topasna's guilty pleas, but we nowhere find a requirement that the court must advise a pleading defendant on the strength of his defenses or the wisest course of action. The transcript speaks for itself, so we quote the offending passages cited by Topasna without interlineated comment, just as he presents them to us without discernible argument, HRAP Rule 28(b)(7); *CSEA v. Doe* and *Bank of Hawai'i v. Shaw, supra:*

Q [Court]. In other words, you can go to trial even if you're guilty and the Court won't punish you any—any worse or harsher just because you went to trial. Do you understand?

A [Topasna]. What if you're not guilty?

Q [Court]. Well, if you're not guilty, you should go to trial.

A [Topasna]. Yeah, but if you're found guilty, you still have to face a bigger ball game. That's what I'm afraid of.

Q [Court]. All right. Do you understand that if you plead guilty, you're giving up your right to a trial, so we're not going to have a trial—we're going to stop the trial right now?

. . . .

Q [Court]. All right. What's going to happen, [Topasna], is if you plead guilty, I'm just going to find you guilty and sentence you in accordance with the plea agreement and you won't have a trial. Do you understand that?

A [Topasna]. Yes.

Q [Court]. And is that what you want to do?

A [Topasna]. To be honest with you, no. But I'm afraid of the other—going through the trial and then finding myself in a bigger pot of stew.

Q [Court]. Well, I understand. But this has to be your decision, okay? If you want to go that way, then fine. We'll proceed that way. But I need to know that you really want to do it that way. And if you do, fine. If not, it's also fine.

Let me ask you this: Is anybody forcing you or pressuring you in any way to plead guilty in this case?

A [Topasna]. I don't have nobody, Your Honor. But I don't have enough good people to—I mean, before the—the accusation was—not enough evidence to—for me to fight with. It's like—

Q [Court]. Well, if you go to trial, [Topasna], all the rulings haven't been made yet. But the rulings that you're aware of—if you go to trial, you can appeal those rulings. You understand? You can take it to a higher court. And if the court down here made a mistake, then you might be entitled to a new trial. Right? That's what appeals are for. If you plead guilty, you give up your right to appeal. So you're not going to have an opportunity to appeal any ruling at this level.

A [Topasna]. Well, what was the last—

Q [Court]. Okay. I was asking you if anybody was forcing you to plead guilty in this case.

The last quoted exchange, regarding appeal of pretrial rulings, brings up a related argument Topasna makes. He contends that the court indicated, just before trial, its inclination to admit the HRE Rule 412 evidence previously held inadmissible by the motions court, but during the change-of-plea colloquy did not respond to his query regarding its admissibility. As a result, Topasna was not sure of the admissibility of the key evidence undergirding his defense and hence could not make knowing and intelligent guilty pleas. In support of this argument, Topasna cites the following exchange from the colloquy:

Q [Court]. All right. Have you and [defense counsel] discussed possible defenses that could be raised to these charges?

A [Topasna]. That was just—you know, that was with [the motions judge]. But it's not admissible; right?

Q [Court]. Well, did you discuss the defenses with [defense counsel]?

A [Topasna]. Yes.

Q [Court]. Okay. So you understand the defenses in your case—the possible defenses?

A [Topasna]. Yes.

■ The court had an obligation to ensure that Topasna was "informed of the defenses which were available to him." *Carvalho*, 55 Haw. at 344–45, 519 P.2d at 898. It appears the court fulfilled that obligation. *See Merino*, 81 Hawai'i at 205, 915 P.2d at 679 (change-of-plea colloquy with *pro se* defendant, held sufficient, contained only this exchange regarding possible defenses: "Q. Would you like to consult with legal counsel to discuss any possible defenses you may have to this charge? A. No, sir."); *Reponte*, 57 Haw. at 364, 556 P.2d at 584 (the court accepting defendant's guilty plea apparently made no inquiry into his defenses, but the supreme court held that the defense he presented at *coram nobis* proceedings to set aside his conviction did not merit such relief or further examination into his defense); *cf. Merino*, 81 Hawai'i at 222, 915 P.2d at 696 (the trial court is not necessarily "obligated to administer a criminal procedure course to a defendant on the substantive intricacies of all conceivable defenses to a charge and all conceivable 'circumstances in mitigation' thereof for the purpose of ensuring that a knowing and intelligent waiver of counsel has preceded a change of plea").

■ The record reveals that Topasna initially intended to rely on one defense—that the perpetrator was not him, but a peer of the complaining witness. The HRE Rule 412 evidence embodied that defense. Far from being confused about the admissibility of the evidence, Topasna was at the time of the change-of-plea colloquy well aware that the HRE Rule 412 evidence had twice been ruled inadmissible and would not be admissible at his trial.

Pretrial, Topasna moved for admission of the HRE Rule 412 evidence. The motions court denied the motion. The day before trial, Topasna raised the issue again, this time with the trial court. Though the trial court did indeed engage in some speculation that the evidence might be admissible, any confusion as to its admissibility was laid to rest immediately thereafter when the trial court sent Topasna and both attorneys to the motions court for a hearing. The motions court denied Topasna's oral motion to reconsider its previous denial.

Hence, it is clear that Topasna was not confused about the nature or the status of his defense. It is in any event doubtful that the court should have issued, in essence, an advisory opinion regarding the admissibility of the HRE Rule 412 evidence during the change-of-plea colloquy, as Topasna contends.

■ We do agree with one contention Topasna makes, one that permeates all of his arguments on appeal. That is, that he was reluctant and hesitant to change his pleas to guilty. At the risk of oversimplifying, we discern that this is the true gravamen of all of Topasna's sprawling arguments on appeal—that he was extremely reluctant and hesitant to change his pleas and thus, his guilty pleas were not voluntary.

We agree that throughout the change-of-plea colloquy, Topasna exhibited an angst, even an agony, regarding the alternatives of pleading to an agreed-upon, ten-year prison term versus risking trial and a mandatory twenty-year prison term upon a jury verdict of guilty. He also exhibited throughout an ambivalence about the strength of his defense and the wisdom of going to trial. In addition to the passages quoted above, several others show the profound conflict Topasna was experiencing:

Q [Court]. Do you want to go ahead with the plea agreement?

A [Topasna]. Yes and no.

Q [Court]. Well, you only get one choice on that one. I'm sorry, [Topasna]. You need to choose one of 'em. Do you know what you want to do, [Topasna]?

A [Topasna]. I'm trying to find an easy way out of this, Your Honor. Just none of it is easy.

Q [Court]. There is no easy way out of this one, [Topasna]. Well, your two choices right now are to take a plea agreement or go to trial. What do you want to do, [Topasna]?

A [Court]. I guess I'll take the deal.

. . . .

Q [Court]. All right. Now, have you discussed your plea fully with [defense counsel]?

A [Topasna]. Yes. But it's still the same. It's not enough. It's still the same.

Q [Court]. Are you satisfied with [defense counsel's] advice?

A [Topasna]. Yes, Your Honor. I'm new to this. So Yes.

. . . .

Q [Court]. We're not at a position where we have much—we're either going to continue with the jury selection or we're going to take your plea. That's it. So you have [defense counsel] saying that you're hesitant. What does that mean? Do you want—do you want to continue with the jury selection in this case or do you want to take the plea agreement?

A [Topasna]. Your Honor, yes. He's right. I'm hesitant. But like I said, I'm afraid for even if—even if I'm found guilty or whatever, still—to appeal on that, try to go back to trial again and still spend some time in jail. It's like, you know.

Q [Court]. Well, I cannot tell you what to do, [Topasna].

A [Topasna]. Yes.

Q [Court]. Do you understand your options here?

A [Topasna]. Yes.

Q [Court]. I've gone over those so that you do understand them. Is that correct? And you don't have any other questions?

A [Topasna]. No, I don't.

Q [Court]. So the only thing that we need to resolve is whether you want to go ahead with the plea agreement. Is that a yes or a no?

A [Topasna]. Yes, Your Honor.

Yet while we agree that Topasna was extremely hesitant and reluctant to change his pleas, we cannot say that this rendered his guilty pleas any less knowing, intelligent and voluntary.

■ We previously discussed the painstakingly thorough colloquy conducted by the court, and thereupon concluded that Topasna's pleas were entered knowingly and intelligently. We further conclude that a voluntary choice between two extremely unpalatable alternatives is still voluntary.

That a voluntary decision is still voluntary, no matter how agonized. And that angst, without more, does not equal involuntariness. Here, Topasna has amply demonstrated the angst, but not the involuntariness of his decision to change his pleas. *Cf. Reponte*, 57 Haw. at 362, 556 P.2d at 583 ("The standard for determining the constitutional validity of guilty pleas 'was and remains whether the plea represents a voluntary and intelligent choice among the alternate courses of action open to the defendant.'" (Citing *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970))).

A review of the colloquy as a whole reveals that the true basis for Topasna's decision to plead guilty was a basic human emotion, fear. Fear of the mandatory twenty-year prison term he risked if he went to trial. While a decision actuated by such a negative emotion is an unfortunate circumstance, nonetheless the profound and fundamental nature of the motivation buttresses our conclusion that the decision was voluntary.

 Nor can it be said that the State or the court created a situation fraught with urgency, such that it somehow coerced Topasna to change his pleas against his will. Topasna states, in one passing instance, that "the [court's] reminder that a jury is waiting outside effectively pressure[d] [Topasna] to hurry." While there was some exigency inherent in the situation, with the jury waiting to continue jury selection and a plea agreement waiting to end it all, that crucible was of no one's making but Topasna's.

The trial was set in the ordinary course after some ten months of vigorous litigation. It was not suddenly sprung upon Topasna. And it was Topasna who broached the possibility of a plea agreement in the middle of jury selection. Moreover, we cannot expect the court to have continued the jury trial proceedings to allow Topasna more time to agonize over his decision. This would be tantamount to giving criminal defendants trial continuances *carte blanche*.

The court did all that it could to ensure knowing, intelligent and voluntary guilty pleas, and then went ahead and did more. As previously mentioned, the court, cognizant of Topasna's ambivalence, afforded him a twenty-minute recess from the colloquy to confer with his attorney regarding his pleas. Still, Topasna seeks error even in this.

 Another argument he makes is that the court erred in not beginning the colloquy anew after the recess. He cites as inadequate the court's inquiry as it continued the colloquy after the recess:

Q [Court]. All right. Do you have any questions about anything having to do with this case—the charge, the defenses, your rights, the consequences of your plea, the maximum penalties, the maximum penalties under the plea agreement? Anything at all? Do you have any questions?

[Defense Counsel]: He asked about an appeal. But I've informed him and you've informed him that by pleading guilty, he's giving that up.

Q [Court]. If you plead guilty, you are giving up your right to appeal any issue except if I give you an illegal sentence. All right? Do you understand that?

A [Topasna]. Yes.

Topasna argues that "[g]iven the fact that the court had taken a break and given the fact that up until that point there was no clear evidence that [Topasna] was not confused about his rights, the lower court was required to go over [Topasna's] rights in full to guarantee that he was entering a knowing, intelligent and voluntary waiver of his rights. Based on the record before it, the court erred in failing to do this."

Topasna cites no authority for the requirement he urges. In light of the fact that the recess was offered to allow him the opportunity to discuss his situation with his attorney, the requirement makes little sense. The discussion likely sharpened his understanding of his rights and their waiver implicit in his change of pleas. We will not speculate or assume that counsel dulled that understanding. For the court to reiterate what it had gone over with him immediately before the recess would have added little to the protections already afforded. We reject this argument as well.

In scattershot fashion, Topasna broaches (but does not formally argue) several other issues. Of note are the following.

Topasna resurrects the arguments from his unsuccessful motion to withdraw his guilty pleas. He argued there and argues here again that he lacked the capacity to knowingly, intelligently and voluntarily enter his guilty pleas because he was tired and his mind was not clear during the change-of-plea colloquy. At the hearing on the motion, he testified that for the two weeks prior to the colloquy, he was deprived of sleep and a clear head by his noisy fellow inmates, their incessant smoking and the fumes from a freshly-painted holding unit.

On cross-examination, however, Topasna admitted that he had enjoyed the clear atmosphere of the courthouse cellblock the whole day of the afternoon colloquy. He also acknowledged that he did not complain about his afflictions during the colloquy. In fact, at the commencement of the colloquy he had assured the judge that he was not under the influence of alcohol or drugs nor under treatment for any mental illness or emotional disability, and that his mind was clear. And our review of the transcript reveals a most alert and responsive—indeed, assertive—interlocutor.

In any case, the court found, on Topasna's motion to withdraw his guilty pleas, that Topasna "was thinking clearly at the time." The court saw "no credible evidence that [Topasna] was confused or that his ability to understand . . . was impaired to any degree when the pleas were entered."

Given the record before us, we see no reason to disturb the court's findings in this respect. *State v. Jim,* 58 Haw. 574, 579, 574 P.2d 521, 524 (1978) ("The court [on a motion to withdraw guilty plea] had before it only the representations of the defendant, and it was within its province to inquire into the truth and validity of the defendant's claims and representations. The trial court was entitled to consider the defendant's asserted reasons and the factual basis therefor against a background consisting of the earlier proceedings." (Citations omitted.)); *cf. Merino,* 81 Hawai'i at 225–26, 915 P.2d at 699–700 (*pro se* defendant's "capacity to exercise

sound judgment" was not impaired during change-of-plea colloquy, even though he had a serious heart condition, might have been experiencing insulin shock and had available to him at the time the medications Lasix, K-lor, Endurol, Halcion and Xanax, all of which carried potential side effects).

To the extent the findings were the court's judgment as to the credibility of Topasna's testimony about his state of mind, we cannot disturb them. *State v. Balberdi,* 90 Hawai'i 16, 21, 975 P.2d 773, 778 (App.1999) ("It is for the trial judge as fact-finder to assess the credibility of witnesses and to resolve all questions of fact; the judge may accept or reject any witness's testimony in whole or in part. Further, an appellate court will not pass upon the trial judge's decisions with respect to the credibility of witnesses and the weight of the evidence, because this is the province of the trial judge." (Brackets, citations and internal quotation marks omitted)).

Topasna also complains that he had not seen the indictment until the change-of-plea proceeding and was therefore not prepared because he was not aware of the "whole charge." Be that as it may, the whole point of our previous discussion is that his colloquy with the court made him adequately aware of the "whole charge" such that his guilty pleas were knowing and intelligent.

Topasna asserts that his questions about the dates of the offenses during the colloquy "intimated that he was not guilty of the offenses[.]" He also calls our attention to his protestations of innocence at the hearing on his motion to withdraw his guilty pleas. Intimations aside, we do not discern in the transcript of the colloquy any clear assertions of innocence. Even if there were, they would not *ipso facto* render Topasna's guilty pleas ignorant, unaware or involuntary.

The Hawai'i Supreme Court has held that where a defendant does not expressly admit guilt at his change of plea and afterwards professes his innocence in a bid to withdraw

the plea, a more thorough and intensive colloquy is required of the trial court:

> While the Supreme Court has held that a guilty plea may be accepted by the trial court, and sentence may be pronounced thereon even where the defendant is unable or unwilling to admit to the commission of the act charged, *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d .162 (1970), we think that where a tendered plea of guilty is accompanied by a contemporaneous denial of the acts constituting the crime charged, a searching inquiry addressed to the defendant personally, to ensure the defendant's complete understanding of the finality of his guilty plea if accepted, should be conducted by the trial court before accepting the plea. Only then, and only after satisfying itself that there is a strong factual basis for the plea, ought the trial court to accept the plea. *Cf. North Carolina v. Alford, supra.*

*State v. Smith*, 61 Haw. 522, 524–25, 606 P.2d 86, 88–89 (1980). As we have demonstrated, the court's painstakingly thorough and comprehensive colloquy in this case fit the *Smith* requirements in every respect.

 Topasna also confides that he "felt defeated due to [the motions court's] ruling on the [HRE] rule 412 motion." As with Topasna's hesitance and reluctance, and even in combination with the two, the short answer is that despair need not and does not in this instance equal involuntariness.

Topasna also avers that "[t]he record does not affirmatively show that [he] understood his appellate rights with respect to the HRE Rule 412 ruling[.]" This averment is simply incorrect. During the colloquy, his appeal rights were explained to him, generally and with reference to pretrial rulings "that you're aware of":

> Q [Court]. Well, I understand. But this has to be your decision, okay? If you want to go that way, then fine. We'll proceed that way. But I need to know that you really want to do it that way. And if you do, fine. If not, it's also fine.
>
> Let me ask you this: Is anybody forcing you or pressuring you in any way to plead guilty in this case?

> A [Topasna]. I don't have nobody, Your Honor, But I don't have good enough people to—I mean, before the—the accusation was—not enough evidence to—for me to fight with. It's like—
>
> Q [Court]. Well, if you go to trial, [Topasna], all the rulings haven't been made yet. But the rulings that you're aware of—if you go to trial, you can appeal those rulings. You understand? You can take it to a higher court. And if the court down here made a mistake, then you might be entitled to a new trial. Right? That's what appeals are for. If you plead guilty, you give up your right to appeal. So you're not going to have an opportunity to appeal any ruling at this level.
>
> A [Topasna]. Well, what was the last—
>
> Q [Court]. Okay. I was asking you if anybody was forcing you to plead guilty in this case.
>
> A [Topasna]. No.
>
> Q [Court]. And is that what you want to do?
>
> A [Topasna]. Yeah.
>
> Q [Court]. Is that a yes?
>
> A [Topasna]. Yes.
>
> Q [Court]. And you realize that if you plead guilty, you're giving up your right to appeal?
>
> A [Topasna]. Yes, Your Honor.

After the court allowed Topasna the recess to confer with his attorney, the following transpired:

> Q [Court]. All right. Do you have any questions about anything having to do with this case—the charge, the defenses, your rights, the consequences of your plea, the maximum penalties, the maximum penalties under the plea agreement? Anything at all? Do you have any questions?
>
> [Defense Counsel]: He asked about an appeal. But I've informed him and you've informed him that by pleading guilty, he's giving that up.
>
> Q [Court]. If you plead guilty, you are giving up your right to appeal any issue except if I give you an illegal sentence. All right? Do you understand that?
>
> A [Topasna]. Yes.

Clearly, Topasna labored under no misconception regarding his appeal rights in general. As the denial of his HRE Rule 412 motion was a salient concern of his during the colloquy, that ruling was certainly one "that [he was] aware of." He later admitted under oath that he knew he could appeal the rulings of the motions court if he went to trial and lost. Hence, he also labored under no misconception regarding his appeal rights in connection with that specific ruling.

 As a final note on appeal, Topasna stresses that he "notified counsel the following day that he had done the wrong thing and had wanted a trial because he was innocent."

If this note addresses the fact that there was no undue delay in moving to withdraw his pleas, that fact is undisputed, but irrelevant if the threshold burden of proving of an ignorant, unaware or involuntary waiver is not carried. *Merino,* 81 Hawai'i at 224, 915 P.2d at 698.

If this note addresses mere buyer's remorse, that is not a "fair and just reason" well taken on this appeal. Where, as here, the guilty pleas were tendered knowingly, intelligently and voluntarily, the court did not abuse its discretion in refusing to allow their withdrawal, even though Topasna agonized over his decision before tender and immediately after had a categorical change of mind in favor of trial:

It is a constitutional requirement that a trial judge ensure that a guilty plea be voluntarily and knowingly entered. *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *Carvalho v. Olim, supra; Wong v. Among, supra.* Rule 11 of the Hawaii Rules of Criminal Procedure likewise mandates that the trial court "shall not accept the [guilty] plea without first determining that the plea is made voluntarily with understanding of the nature of the charge." It is error when a court does not fulfill these requirements and a clear abuse of discretion when a trial court refuses to allow the withdrawal of pleas tainted by such error. *On the other hand, if the accused, with full knowledge of the charge against him and of his rights and the consequences of a plea of guilty,*

*enters such a plea understandingly and voluntarily, the court may, without abusing its discretion, refuse to permit him to withdraw the plea.*

*State v. Dicks,* 57 Haw. 46, 49–50, 549 P.2d 727, 730 (1976) (emphasis supplied). *See also Merino,* 81 Hawai'i at 224, 915 P.2d at 698.

## IV. CONCLUSION.

For the foregoing reasons, the May 21, 1999 judgment is affirmed.

## APPENDIX A

MARCH 16, 1999

THE COURT: The record will note the presence of [Topasna]; his counsel, and the prosecutor, in the absence of the jury panel. [Defense counsel].

[DEFENSE COUNSEL]: I understand, Your Honor, my client will be changing his plea and accepting an agreement by the State—or from the State. Excuse me.

THE COURT: Is that correct, [Topasna]?

[TOPASNA]: Yes, Your Honor.

THE COURT: Okay. I need to ask you some questions to make sure you understand the charges that you're pleading. Is it guilty or no contest?

[DEFENSE COUNSEL]: They require a guilty plea as opposed to no contest.

THE COURT: Okay.
BY THE COURT:

Q What is your full name?

A Alfred Leon Guerrero Topasna.

Q How old are you?

A 46.

Q How much education have you had?

A Up to nine and a half.

Q Do you read and write English?

A Yes.

Q Are you under the influence of any alcohol or drugs this afternoon?

A None.

Q Are you under treatment for any mental illness or emotional disability?

A No, Your Honor.

Q Is your mind clear?

A Yes, sir.

Q I have a plea form here that appears to have been signed by you on the middle of the second page. Did you sign this form?

A Yes.

Q Did [defense counsel] read and explain the form to you before you signed it?

A Yes, sir.

Q Do you understand everything in the form?

A Yes.

Q Do you have any questions about anything on the form?

A No, sir.

Q You sure?

A Yeah. I asked the counselor already.

Q All right. Now, it says here that you're going to plead guilty to Counts I and through IV, Sexual Assault in the Second Degree; Count V, Sexual Assault in the Fourth Degree; and Count VI, Sexual Assault in the Third Degree. Is that right?

A Yes.

Q Has each one of these six charges been explained to you by [defense counsel]?

A Yeah, kind of.

Q Well, you have six separate charges.

A Yes, sir.

Q What I need to know is whether you understand what you're charged with in each of those six charges.

A I think I got an idea of what the six—

Q Well, to make sure, Count I charges you with knowingly inserting your finger into the vagina of [the complaining witness] sometime between September 1st, 1992, and June 9th, 1995. Do you understand that charge?

A Could you repeat that, Your Honor?

Q Okay. Sometime between September 1st, 1992, and June 9th, 1995, you knowingly inserted your finger into the vagina of [the complaining witness].

A Yes. I understand that.

Q You understand what you're being charged with?

A Yeah.

Q Okay. Then Count II charges you with knowingly inserting your penis into [the complaining witness's] vagina between the same two dates, January 9th, 1992, and June 9th, 1995. Do you understand that charge?

A Yes, Your Honor.

Q Count III charges you with knowingly placing your mouth on [the complaining witness's] vagina between January 9th, 1995, and March 19th, 1997.

[PROSECUTOR]: Your Honor, for the record, September 1st, 1995.

THE COURT: Okay. I'll transpose that.

BY THE COURT:

Q September 1st, 1995, to March 19th, 1995. Do you understand Count III?

A Yes, Your Honor.

Q Okay. Count IV charges you with knowingly inserting your penis into [the complaining witness's] vagina sometime between September 1st, 1995, and March 19th, 1997. Do you understand Count IV?

A Yes, Your Honor.

Q Count V charges you with knowingly placing [the complaining witness's] hand on your penis by compulsion; that is, without her consent, sometime between September 1st; 1995, and March 19th, 1997. Do you understand Count V?

A Yes, Your Honor.

Q And the last count is Count VI. That charges you with knowingly placing your hand on [the complaining witness's] vagina by strong compulsion—maybe some sort of force involved—between March 1st, 1997, and March 31st, 1997. Do you understand Count VI?

A Yes.

Q All right. Do you have any questions about any of the counts?

A First time I seen the dates or any of this—you know.

Q Excuse me?

A This the first time I seen these charges and the dates and the years that this happened. I've never seen this before.

Q Okay. Do you have any questions about the counts, though?

A Well—

Q I'll tell you what, [Topasna], you know, it's up to you what you do in this case. My understanding is that the State has offered a plea agreement and you at least tentatively agreed to accept that plea agreement or vice versa. You offered to plead and they agreed to your offer.. Whatever way it happened. But there's still a jury outside, and you can always go to trial.

You know, I need to know what you really want to do here today. And the first step is finding out whether you understand the charges. And you've said that you understand the charges?

A Now.

Q But do you have any questions about that? We need to know that you understand what you're being charged with.

A Now I've seen what—that's the first time I've seen this.

Q Okay.

A But—

Q Do you have any questions about the charges?

A Not right now, I guess.

Q All right. Have you and [defense counsel] discussed possible defenses that could be raised to these charges?

A That was just—you know, that was with [the motions judge]. But it's not admissible, right?

Q Well, did you discuss the defenses with [defense counsel]?

A Yes.

Q Okay. So you understand the defenses in your case—the possible defenses?

A Yes.

Q Now, do you understand that if it were not for the plea agreement in this case, the maximum penalty for Counts I and II—excuse me—isn't Count I and 2A?

[PROSECUTOR]: Yes, Your Honor.

BY THE COURT:

Q Counts I and II are Class A felonies, and they would have carried a maximum of 20 years in prison and a $50,000 fine, okay? Counts II—excuse me—III, IV—III and IV would have carried a maximum penalty of 10 years in prison and a $25,000 fine. Count V would carry a maximum penalty of 1 year in prison and a $2,000 fine. And Count VI is a Class C felony. It would carry a maximum penalty of 5 years in prison and a $10,000 fine.

Okay. [Topasna], if there were no plea agreement in this case, you could be sentenced to a total of 66 years in prison and a total fine of $162,000 for all of the offenses together. You understand?

A Yes, Your Honor.

Q Okay. And there's also a possibility, because of the number of counts involved, that your maximum prison term could be doubled from 65 years, okay—you double those 65 years, and you would get 130, I think.

[DEFENSE COUNSEL]: I think 20 gets life term.

THE COURT: Okay. Life. I'm sorry. All right. Let me start all over again.

BY THE COURT:

Q You understand that if there weren't for a plea agreement in this case, the maximum prison term would be 66 years and the maximum fine, $162,000? There's a possibility that your prison term could be extended to life if there were no plea agreement. Do you understand that?

A Yes.

Q Okay. Now, under the terms of the plea agreement, the Class A felonies, Counts I and II, are being reduced to Class B felonies, I understand. And the agreement is that the maximum penalty in your case would be 10 years in Counts I and II; Counts III and IV, also 10 years; Count V, 1 year; and

Count VI, 5 years. And all those terms would run concurrently so that you would be given a maximum term of 10 years in prison. Is that your understanding of the plea agreement?

A Yes, Your Honor.

Q So you understand that if you accept the plea agreement, I am going to sentence you to a maximum of 10 years in prison? There's no possibility of probation in this case if you accept the plea agreement.

A Yes, sir.

Q You understand that?

A Yes.

Q Okay. Now, do you understand that conviction of any of these offenses would obligate you to comply with the requirements of the sex offender registration and notification law for the rest of your life?

A Yes, Your Honor.

Q Has [defense counsel] explained the requirements of the registration law to you?

A Yes.

Q Okay. Do you understand that under the registration—registration law, you are required to furnish and update information pertaining to your identification; legal, temporary, and anticipated addresses; employment; vehicles; criminal history; treatment; and citizenship?

A Yes.

Q And you must report changes within three days and register in other states you may establish residence in?

A Yes, Your Honor.

Q Do you understand that the information you provide will be available to law enforcement and other government agencies and may be accessible to the public?

A Yes.

Q And do you understand that a knowing or intentional failure to comply with the registration law may result in imprisonment for up to 5 years and a fine of up to $10,000, and even a reckless failure to comply may result in imprisonment for up to a year and a fine of up to $2,000?

A Yes.

Q Now, knowing the penalties that you face, the reduced penalty, I guess, with the plea agreement, and all of the ramifications of the registra—the sexual offender registration law, do you still want to plead guilty in this case?

A Yes, Your Honor.

Q Do you understand that if you are not a United States citizen, conviction of any one of these charges could result in your being deported, not allowed back into the country, or denied naturalization?

A Yes, Your Honor.

Q Do you understand that you have the right to plead not guilty, to persist in that plea, and to go to trial no matter how strong the evidence against you might be?

A Yes.

Q In other words, you can go to trial even if you're guilty and the Court won't punish you any—any worse or harsher just because you went to trial. Do you understand?

A What if you're not guilty?

Q Well, if you're not guilty, you should go to trial.

A Yeah. But if you're found guilty, you still have to face a bigger ball game. That's what I'm afraid of.

Q All right. Do you understand that if you plead guilty, you're giving up your right to a trial, so we're not going to have a trial—we're going to stop the trial right now?

A Yes.

Q You're also giving up all of the rights you would have had at trial, which is to have the State prove you guilty beyond a reasonable doubt of all of these six charges. The jury, 12 people, would all have to unanimously agree that you were guilty before you could be found guilty of any of the charges. You would have the right to cross-examine—

All 12 of the jurors would have to agree that you were guilty before you could be found guilty of any of these charges.

A Of any of 'em?

Q Yeah. Each charge, for you to be found guilty, all 12 would have to say you were guilty. So six of the—six times, all 12 would have to say you were guilty for the six counts. All right? Do you understand?

A Yes.

Q And you're giving that up if you plead guilty; right?

A That's a lot.

Q All right?

A Yes.

Q And you know, you're giving up your right to question all of the witnesses who would testify against you. You're giving up your right to present your own witnesses and to compel them to come to court, even if they didn't want to come. You're giving up your own right to testify yourself and also your right to remain silent at your trial. Do you understand that if you plead guilty, you're giving up all of these rights?

A Yes.

Q All right. What's going to happen, [Topasna], is if you plead guilty, I'm just going to find you guilty and sentence you in accordance with the plea agreement and you won't have a trial. Do you understand that?

A Yes.

Q And is that what you want to do?

A To be honest with you, no. But I'm afraid of the other—going through the trial and then finding myself in a bigger pot of stew.

Q Well, I understand. But this has to be your decision, okay? If you want to go that way, then fine. We'll proceed that way. But I need to know that you really want to do it that way. And if you do, fine. If not, it's also fine.

Let me ask you this: Is anybody forcing you or pressuring you in any way to plead guilty in this case?

A I don't have nobody, Your Honor. But I don't have good enough people to—I mean, before the—the accusation was—not enough evidence to—for me to fight with. It's like—

Q Well, if you go to trial, [Topasna], all the rulings haven't been made yet. But the rulings that you're aware of—if you go to trial, you can appeal those rulings. You understand? You can take it to a higher court. And if the court down here made a mistake, then you might be entitled to a new trial. Right? That's what appeals are for. If you plead guilty, you give up your right to appeal. So you're not going to have an opportunity to appeal any ruling at this level.

A Well, what was the last—

Q Okay. I was asking you if anybody was forcing you to plead guilty in this case.

A No.

Q And is that what you want to do?

A Yeah.

Q Is that a yes?

A Yes.

Q And you realize that if you plead guilty, you're giving up—your right to appeal?

A Yes, Your Honor.

Q Again, the plea agreement calls for the State to reduce Count I and Count II from Class A felonies to Class B felonies; the parties stipulate to an open 10 years of imprisonment and an open 5–year term of imprisonment; all jail terms shall be concurrent; and the State will not seek an extended jail term; and that you agree to registration as a sex offender and sex offender treatment. Do you understand the plea agreement?

A Yes.

Q And do you have any questions about it?

A No, Your Honor.

Q Do you want to go ahead with the plea agreement?

A Yes and no.

Q Well, you only get one choice on that one. I'm sorry, [Topasna]. You need to choose one of 'em. Do you know what you want to do, [Topasna]?

A I'm trying to find an easy way out of this, Your Honor. Just none of it is easy.

Q There is no easy way out of this one, [Topasna]. Well, your two choices right now

are to take a plea agreement or go to trial. What do you want to do, [Topasna]?

A I guess I'll take the deal.

Q The Court will be—will agree to be bound by the plea agreement so that your sentence will be in accordance with it. You know exactly what the sentence will be.

Aside from the plea agreement, has anybody made any other promises of any kind to you in return for your plea?

A No.

Q Have you discussed your pleas fully with your attorney?

A Just—just within the half hour.

Q Well, do you want some more time to discuss it with him? See, the problem is that we have a jury outside.

A Yes.

Q You know, and—well, do you need more time to discuss this with your lawyer?

A I kind of came up with—I started asking questions when we kept going back here. I just kind of was afraid. And these charges are serious. But a lot of 'em, I—most—actually, all the charges and the dates are not correct.

Q Well, if you want to go to trial, that option is still open to you. We just need to know what you want to do, okay?

A Yes.

Q Do you need time? I can't give you that much time. [Defense counsel], a few minutes to talk to him without the—Court being present. But we got 50 people out there. And for the record, it is now 3 o'clock. And we've been here since 1:30—or the jury has been here since 1:30, waiting. I can take a brief recess now if you think you need it.

[DEFENSE COUNSEL]: I think we need it given his hesitancy.

THE COURT: All right. We'll take a brief recess then. You folks need to talk. But when we come back in about 10 minutes, then I need to know what you're going to do, [Topasna].

[TOPASNA]: Thank you.

(A recess was taken.)

THE COURT: The record will note the presence of [Topasna], his counsel, the prosecutor, in the absence of the jury panel. The record will note that it is now 3:22.

BY THE COURT:

Q [Topasna], have you had an opportunity to talk to [defense counsel]?

A Yes, Your Honor.

Q Have you decided what you want to do in this case?

A Yeah.

Q What is that?

A Take the plea.

Q All right. Now, have you discussed your plea fully with [defense counsel]?

A Yes. But it's still the same. It's not enough. It's still the same.

Q Are you satisfied with [defense counsel's] advice?

A Yes, Your Honor. I'm new to this. So yes.

Q All right. Have you completely understood what you and I have been talking about this afternoon?

A About the charges?

Q Everything. Everything we've been talking about—the charges, the plea agreement.

A Everything, yes.

Q All right. Do you have any questions about anything having to do with this case—the charge, the defenses, your rights, the consequences of your plea, the maximum penalties, the maximum penalties under the plea agreement? Anything at all? Do you have any questions?

[DEFENSE COUNSEL]: He asked about an appeal. But I've informed him and you've informed him that by pleading guilty, he's giving that up.

BY THE COURT:

Q If you plead guilty, you are giving up your right to appeal any issue except if I give you an illegal sentence. All right? Do you understand that?

A Yes.

Q All right. Do you have any questions other than that?

A No.

Q All right. And [Topasna], I'm going to ask that you sign the same form at the bottom of page 2 to acknowledge that I questioned you about these matters, you understand, and that you're entering your pleas voluntarily.

[DEFENSE COUNSEL]: Your Honor, for the record, [Topasna] has signed the acknowledgment portion of the change of plea form.

THE COURT: Thank you.

[DEFENSE COUNSEL]: Your Honor, I detect some hesitancy on his part. But I take it that he's decided to just accept the agreement.

BY THE COURT:

Q Well, [Topasna], you understand that once you enter your pleas in this case, you're not going to be allowed to take them back and go to trial? If you make up your mind now, that's it. You decide to take the plea agreement and you enter your guilty pleas today, it's going to be very, very difficult for you to withdraw your pleas. All right?

A Well, I didn't have time enough to think about this, Your Honor. I just started asking questions when I got back—

Q Well, you want to go to trial? We have the jury outside. We can do that. You know—well, I don't want to get into an argument with you, but this case has been pending for quite a while.

A Yes.

Q And you know, we started jury selection and then this came up. So that's just—

A I should have asked questions before the jury selection started.

Q We're not at a position where we have much—we're either going to continue with the jury selection or we're going to take your plea. That's it. So you have [defense counsel] saying that you're hesitant. What does that mean? Do you want—do you want to

continue with the jury selection in this case or do you want to take the plea agreement?

A Your Honor, yes. He's right. I'm hesitant. But like I said, I'm afraid for even if—even if I'm found guilty or whatever, still—to appeal on that, try to go back to trial again and still spend some time in jail. It's like, you know.

Q Well, I cannot tell you what to do, [Topasna].

A Yes.

Q Do you understand your options here?

A Yes.

Q I've gone over those so that you do understand them. Is that correct? And you don't have any other questions?

A No, I don't.

Q So the only thing that we need to resolve is whether you want to go ahead with the plea agreement. Is that a yes or a no?

A Yes, Your Honor.

THE COURT: Okay. Now, the paragraph 6 of the plea form says there is—there is evidence and factual basis in the police reports to sustain a conviction in these cases. Is there a stipulation to a factual basis in the police reports, [defense counsel]?

[DEFENSE COUNSEL]: Your Honor, obviously, if we look at the grand jury transcript, which [Topasna's] had a chance to review, as well as the police report, which he's had a chance to review on more than one occasion, there's certainly factual basis in those documents that would support the conviction.

THE COURT: [Prosecutor], do you want to state a factual basis?

[PROSECUTOR]: If this case were to proceed and if we were to call witnesses, the State would have proved in Count I, that between September 1st, 1992, and June 9th, 1995, while [the complaining witness] was less than 14 years old, when she was in the 5th, 6th, or 7th grade, her mother's live-in boyfriend, [Topasna], did knowingly subject her to sexual penetration by inserting his

finger into her vagina on more than one occasion.

In Count II, during that same time period, [Topasna] inserted his penis into the vagina of [the complaining witness] when she was less than 14 years old.

As to Counts III, IV, and V, on or about the 1st day of September 1995, to and including the 19th day of March 1997, while [the complaining witness] was in the 8th or 9th grade, [Topasna], in Count III, placed his mouth on her vagina without her consent; in Count IV, inserted his penis into [the complaining witness's] vagina without her consent; and in Count V, forced [the complaining witness] to place her hands on [Topasna's] penis without her consent. She was not married to [Topasna].

And as to Count VI, or on or about March 1st, 1997, to and including the 31st March 1997, when [the complaining witness] was in the 9th grade, [Topasna] placed his hand on [the complaining witness]—I'm sorry—[the complaining witness's] vagina by the use of force.

I don't know, Your Honor. Did I misspeak in the other counts? I meant to say [the complaining witness]. I don't know if I said [the complaining witness].

All of these events occurred on this island at their apartment at Lauiki Street, in the City and County of Honolulu, State of Hawaii.

THE COURT: All right. [Topasna], to the charge of Sexual Assault in the Second Degree in Count I, what is your plea?

[TOPASNA]: Guilty.

THE COURT: To the charge of Sexual Assault in the Second Degree in Count II, what is your plea?

[TOPASNA]: Guilty.

THE COURT: To the charge of Sexual Assault in the Second Degree in Count III, what is your plea?

[TOPASNA]: Guilty.

THE COURT: To the charge of Sexual Assault in the Second Degree in Count IV, what is your plea?

[TOPASNA]: Guilty.

THE COURT: To the charge of Sexual Assault in the Fourth Degree in Count IV, what is your plea?

[TOPASNA]: Guilty.

THE COURT: And to the charge of Sexual Assault in the Third Degree in Count VI, what is your plea?

[TOPASNA]: Guilty.

THE COURT: I find that [Topasna] voluntarily enters his pleas with an understanding of the nature of the charges against him and the consequences of the pleas. I find a factual basis for the pleas. His pleas are accepted, and I find him guilty of Sexual Assault in the Second Degree in Counts I through IV, guilty of Sexual Assault in the Fourth Degree in Count V, and guilty of Sexual Assault in the Third Degree in Count VI.

Sentencing is set for Friday, May 21st, 1999, at 8:30 a.m. in this courtroom. [Topasna] is referred to the Adult Probation Division for pre-sentence investigation and report.

[DEFENSE COUNSEL]: What time?

THE COURT: 8:30 a.m., [defense counsel].

Okay. [Topasna], we will see you on May 21st.

[TOPASNA]: Thank you.

THE COURT: Okay. We'll stand in recess.

(End of proceedings.)