102 P.3d 346

Quincy Choy FOO, III, Petitioner–
Appellant

v.

STATE of Hawai‘i, Respondent–Appellee.

State of Hawai‘i, Plaintiff–Appellee

v.

Quincy Choy Foo, III, Defendant–
Appellant.

No. 25338.

Supreme Court of Hawai‘i.

Dec. 2, 2004.

Stuart N. Fujioka, Honolulu, On the briefs, for petitioner & defendant-appellant.

Mangmang Qiu Brown, Deputy Prosecuting Attorney, City and County of Honolulu, On the briefs, for respondent & plaintiff-appellee.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by ACOBA, J.

In this consolidated appeal, Petitioner & Defendant–Appellant Quincy Choy Foo, III (Defendant) appeals (1) in Criminal No. 99–1602 (Cr. No. 99–1602), from the January 6, 2003 post-judgment order denying a motion

to withdraw his guilty plea entered by the circuit court of the first circuit (the court) and (2) in Special Proceeding Prisoner No. 00–0060 (S.P.P. No. 00–0060), from the September 12, 2002 order denying his petition for post conviction relief.[1]

For the reasons set forth below, we affirm the January 6, 2003 post-judgment order denying the motion to withdraw guilty plea in Cr. No. 99–1602 and the September 12, 2002 order denying petition for post conviction relief in S.P.P. No. 00–0060.

## I.

On August 18, 1999, Defendant was charged with nine offenses in Cr. No. 99–1602: Sexual Assault in the First Degree, Hawai'i Revised Statutes (HRS) § 707–730(1) (1993)[2] (Count I), Assault in the Third Degree, HRS § 707–712(1)(a) (1993)[3] (Count II), Violation of Temporary Restraining Order, HRS § 586–4 (Supp.1999)[4] (Counts III and IV), Terroristic Threatening in the Second Degree, HRS § 707–717(1) (1993)[5] (Count V), Sexual Assault in the Second Degree, HRS § 707–731(1)(a) (Supp.2001)[6]

(Counts VI and VIII), and Sexual Assault in the Fourth Degree, HRS § 707–733(1)(a) (1993)[7] (Counts VII and IX).

Defendant entered into a plea agreement with Respondent & Plaintiff–Appellee State of Hawai'i (the prosecution). At the request of the parties, the court agreed to bind itself to the terms and conditions of the plea agreement under Hawai'i Rules of Penal Procedure (HRPP) Rule 11(e)(1) (2002).[8] The terms and conditions of the plea agreement were as follows:

(1) [The prosecution] agrees to dismiss [Count I], Sexual Assault First Degree.

(2) Defendant to plead guilty to [Counts II] through [IX], inclusive, as charged.

(3) *[The prosecution] agrees to a reduced mandatory minimum term on [Counts VI], [VIII] of one year.*

(4) [The prosecution] agrees to not seek enhanced, extended, or consecutive sentencing.

(5) [The prosecution] agrees that the instant sentence will run concurrently with any other sentence presently being served.

---

(4) Entering or visiting the petitioner's residence; or

(5) Contacting, threatening or physically abusing the petitioner at work.

**5.** HRS § 707–717(1) states that "[a] person commits the offense of terroristic threatening in the second degree if the person commits terroristic threatening other than as provided in section 707–716."

**6.** HRS § 707–731(1)(a) states that "[a] person commits the offense of sexual assault in the second degree if ... [t]he person knowingly subjects another person to an act of sexual penetration by compulsion."

**7.** HRS § 707–733(1)(a) states that "[a] person commits the offense of sexual assault in the fourth degree if ... [t]he person knowingly subjects another person to sexual contact by compulsion or causes another person to have sexual contact with the actor by compulsion."

**8.** HRPP Rule 11(e) concerning plea agreements states in pertinent part that "[t]he court may participate in discussions leading to such plea agreements and may agree to be bound thereby." HRPP Rule 11(e)(1).

---

**1.** The Honorable Reynaldo D. Graulty presided over Defendant's change of plea, motion to withdraw guilty plea, and the petition for post conviction relief.

**2.** HRS § 707–730(1) states in relevant part as follows:
(1) A person commits the offense of sexual assault in the first degree if:
(a) The person knowingly subjects another person to an act of sexual penetration by strong compulsion;
(b) the person knowingly subjects to sexual penetration another person who is less than fourteen years old[.]

**3.** HRS § 707–712(1)(a) states that "[a] person commits the offense of assault in the third degree if the person ... [i]ntentionally, knowingly, or recklessly causes bodily injury to another person[.]"

**4.** HRS § 586–4(a) and (b) entitled "Temporary restraining order," provides in part that:
The order shall enjoin the respondent or person to be restrained from performing any combination of the following acts:
(1) Contacting, threatening, or physically abusing the petitioner;
(2) Contacting, threatening, or physically abusing any person residing at the petitioner's residence;
(3) Telephoning the petitioner;

(6) *[The prosecution] agrees to stand silent before the Hawai'i Paroling Authority regarding the setting of the mandatory minimum term under Counts [VI] and [VIII].*

(Emphases added.) Pursuant to the plea agreement, on March 15, 2000, Defendant pled guilty to Counts II through IX and the prosecution moved to nolle prosequi[9] the first degree assault charge in Count I.

## II.

At the change of plea hearing on March 15, 2000, Defendant confirmed with the court that he completed the twelfth grade and had no problems in reading and writing the English language. Defendant stated that his mind was clear and he was not under the influence of alcohol or any other drugs, nor was he under treatment for any mental illness or emotional instability.

The court asked Defendant whether his lawyer had discussed the written plea agreement "fully" with him before he had signed the agreement. Defendant replied in the affirmative. The court informed Defendant of the rights he was relinquishing by pleading guilty, and of the fact that he would not be able to change his mind after sentencing. As to the maximum sentence, the court indicated that "the maximum indeterminate sentence for these charges are 25 years ... [a]nd [that] there would have been a possibility of [an] extended maximum indeterminate sentence of 45 years." Defendant stated he was aware of these sentences. Also, Defendant agreed that he was pleading guilty of his own will, and no one was threatening or forcing him to do so.

9. The prosecution appears to have orally moved to nolle prosequi Count I at the March 15, 2000 change of plea hearing. On the Notice of Entry of Judgment filed on June 1, 2000, the final judgment and sentence of the court as to Count I indicates "Nolle prosequi." On June 6, 2000, the prosecution filed a written motion and the court granted such motion to nolle prosequi Count I.

10. Defendant was represented by Mr. Glenn Choy at Defendant's change of plea hearing.

11. HRS § 706-606.5 states in pertinent part as follows:
(1) Notwithstanding section 706-669 and any other law to the contrary, any person

The court then asked Defendant whether he understood the proceeding and whether there was "any part of it that [Defendant] would like to have more fully explained to [him.]" Defendant replied, "No. I pretty much understand everything." The following colloquy then transpired:

THE COURT: Have you discussed this guilty plea fully with your attorney, Mr. Choy?[10]

THE DEFENDANT: Yes.

THE COURT: Are you satisfied with his advice?

THE DEFENDANT: Yes.

THE COURT: Is there a stipulation that there's a factual basis for all the charges contained in Counts [II] through [IX] in this case?

MR. CHOY: Yes, sir.

THE COURT: All right. Very well.

The court then accepted Defendant's guilty pleas in Counts II through IX, and "[found] that the [D]efendant ha[d] voluntarily entered his plea of guilty, with an understanding of the nature of the charges against him and the consequences of his plea." Defendant signed the acknowledgment on the written guilty plea form to the effect that he was questioned by the judge in open court and that Defendant knew what he was doing when he pled guilty to the charges.

## III.

On March 24, 2000, the prosecution moved to sentence Defendant as a repeat offender in Counts VI and VIII pursuant to HRS § 706-606.5 (Supp.2002).[11] In this motion

convicted of ... any class B felony, or any of the following class C felonies: ... 707-716 relating to terroristic threatening in the first degree; ... and who has ... prior convictions for ... the following felonies, including an attempt to commit the same: a class B felony, any of the class C felony offenses enumerated above, or any felony conviction of another jurisdiction *shall be sentenced to a mandatory minimum period of imprisonment without possibility of parole during such period as follows:*
. . . .
(b) Two prior felony convictions:
. . . .
(iii) Where the instant conviction is for a class B felony—*six years, eight months;*

the deputy prosecutor declared that "on or about March 15, 2000, ... Defendant will be convicted of the [said] offenses." The prosecution noted that Defendant had two prior convictions.[12] Based on these prior convictions, the prosecution further noted that "Defendant is eligible for sentencing as a repeat offender to a mandatory minimum term of six years, eight months imprisonment. *The plea agreement in this case, however, calls for Defendant to be sentenced to a reduced mandatory minimum term of one year."* (Emphasis added.) No opposition was filed to this motion.

At the sentencing hearing on June 1, 2000, the court granted this motion for repeat offender status as to those counts.

THE COURT: ... First the motion for sentencing of repeat offender. Is there any dispute as to the applicability of the Section 706–606.5?

[DEFENSE COUNSEL]: No, Your Honor.

THE COURT: Very well.

[PROSECUTOR]: Your Honor, I should have been more specific in my moving papers. *The [prosecution] moves for sentencing of repeat offender only as to Counts [VI] and [VIII].* I didn't make that clear in my motion.

. . . .

THE COURT: All right. Counts [VI] and [VIII] are the felony B counts, and it's those counts to which the repeat offender statute will apply?

[PROSECUTOR]: That is correct, Your Honor. The remaining counts are all misdemeanors to one year incarceration.

THE COURT: *The court will grant the motion for repeat offender with regard to Counts [VI] and [VIII] only.*

Proceeding now to sentencing, I know that there is a Rule 11 plea agreement and that we were on the eve of trial when [D]efendant decided to enter a plea of

. . . .

(Emphases added.)

12. Defendant's two prior criminal convictions included convictions for (1) Criminal Property Damage in the First Degree, a class B felony, pursuant to HRS § 708–820, and Terroristic

guilty to Counts [II] through [IX]. Anything further from the [prosecution] with regard to the plea agreement that was entered into in this case?

(Emphases added.) The plea agreement was reiterated by defense counsel.

Your Honor, that would be it as far as additions or amendments.

As far as further argument, we just would note that the pre-sentence report doesn't contain any major new revelations which should cause the court to depart from the Rule 11 plea agreement. So we'd just ask that pursuant to the plea agreement the court sentence [Defendant] on Counts [II] through [IX] as charged, that *pursuant to our agreement there be a reduced mandatory minimum on Counts [VI] and [VIII] of one year,* and that there be no enhanced, extended, or consecutive sentencing again pursuant to agreement, and that the instant sentence will run concurrently with any other sentences presently being served, and *further* that the— well, *that the provision in our plea agreement that the [prosecution] stand silent before the parole board regarding the setting of the mandatory minimum term in Counts [VI] and [VIII] continue to be part of the record.*

(Emphases added.) Defendant did not contest the repeat offender order or the plea agreement.

[THE COURT]: ... [Defendant], you have the opportunity to address the court at this time. *Is there anything you wish to say?*

THE DEFENDANT: I like to just apologize for, you know, what my wrongdoing that I did, that I learned my lesson by all my mistakes that I did and willing to—I mean the first time I made my first mistakes I did pretty much changes in myself. And like this one I know I made another mistake and hopefully I never do this again and change my—

Threatening in the First Degree, a class C felony, pursuant to HRS § 707–716, in Criminal No. 93–167, and (2) Terroristic Threatening in the First Degree, a class C felony, pursuant to HRS § 707–716, in Criminal No. 94–0597.

THE COURT: All right. Thank you very much.

THE DEFENDANT: Thank you.

(Emphasis added.) On June 1, 2000, the judgment of conviction and sentence in Cr. No. 99–1602 was filed. On the judgment, Defendant was sentenced to one year incarceration on Counts II, III, IV, V, VII, IX, and to ten years on Counts VI and VIII "with a reduced mandatory minimum term of one year [for each count] pursuant to the plea agreement," the sentence to be served concurrently with any other sentence being served. Thus, pursuant to item 3 of the plea agreement, the court reduced the mandatory minimum sentence applicable to repeat offenders for Counts VI and VIII to one year imprisonment for each count.

On September 14, 2000, the Hawai'i Paroling Authority (paroling authority) determined that Defendant was required to serve a minimum term of five years on Counts VI and VIII before being considered for parole.

### IV.

On December 8, 2000, Defendant filed a Petition for Post–Conviction Relief under HRPP Rule 40 in S.P.P. No. 00–0060 (Rule 40 petition), claiming four grounds for relief: (1) ineffective assistance of counsel that resulted in his plea and conviction; (2) unlawful revocation of parole; (3) violation of the plea agreement by the prosecution because his parole was not continued; and (4) "hindrance" of Defendant's efforts to file this petition because of prison rule 17–202–1(b).

On May 14, 2001, the court ordered Defendant to clarify his petition as to "ground one." On May 29, 2001, Defendant filed his "Amended Petition for Ground One Under Rule 40 Petition (Clarification of Facts)." Defendant explained in this amended petition that (1) at the plea hearing and before sentencing his attorney failed to show him discovery, which allegedly was devoid of medical and physical evidence in this sexual assault case and (2) he "was unaware of the fact that with the doctor's report and with [complainant's] testimony [, he] could have had a trail [sic] by jury or judge instead of using [complainant's] letter and testimony as a bargaining tool" during plea negotiations.

#### A.

A hearing was held on August 14, 2002 as to ground one only of the Rule 40 petition. The court began by summarizing all the grounds into two claims:

The petition can, therefore, be separated into two categories, one, ineffective assistance of counsel or failure by [defense counsel] to disclose findings in the medical report to [D]efendant and, two, purported violation of the plea agreement because the [D]efendant was not placed back on parole.

Before proceeding with the hearing as to ground one, the court orally denied the second claim. The court stated in relevant part that

the terms of the plea agreement contemplated and *explicitly set forth that [D]efendant would serve a term of incarceration with a mandatory minimum of one year and a maximum of ten years depending on the determination of the parole board.* In this particular case, the parole board set the minimum term at five years before [D]efendant was eligible for parole. *Defendant is simply incorrect when he asserts that parole was not continued in accordance with the plea agreement. This claim, unlike the first, is not one where the [D]efendant has alleged facts that, if proven, would entitle him to the relief he seeks.* Rather, the court will find that his second claim is patently frivolous and will be dismissed without taking any evidence.

(Emphases added.)

At the hearing, Defendant testified that (1) trial counsel did not disclose the information from the medical examination to him during pre-hearing meetings with Defendant and (2) trial counsel explained the content of the medical reports and its lack of physical evidence for the first time at the hearing before the paroling authority. In contrast, trial counsel testified that (1) he reviewed and explained the lack of findings of physical evidence in the medical reports with Defendant at their December 24, 1999 meeting and (2) he discussed with Defendant the possible

motive of the complainant in reporting the alleged assault as a *possible* strength or *defense*. Both Defendant and trial counsel testified that complainant was going to recant and testify in favor of Defendant at trial. Defendant did not testify to other possible defenses that could have been raised by his trial counsel.

At the Rule 40 hearing, the following relevant testimony was received into evidence:

[DEPUTY PROSECUTING ATTORNEY]: ... Based on your conferences—or extensive conferences with the complainant in this case, what was your understanding of her proposed testimony if she were called to testify in a trial in this case?

[TRIAL DEFENSE COUNSEL]: My understanding was that she was going to recant the substance of previous statements recorded by the police and also by medical service providers.

The deputy prosecuting attorney further questioned trial defense counsel as follows:

Q: [W]hen you conferred with him regarding this particular strength of the case, namely, lack of injury, was this in person or over the phone, if you remember?

A: I distinctly recall at our first conference, December 24 th, '99, that we discussed that. So that would be in person.

Q: So *your initial contact with him, then, your testimony is that you brought to his attention the lack of injuries reported by the doctor?*

A: *Yes. And as I mentioned, he himself would bring that out, that that was his understanding also.*

. . . .

Q: Let's talk about something regarding pretrial preparation. Now—

A: I'm sorry, if I could add.

Q: Oh, I'm sorry. Go ahead.

A: ... *Another possible strength or defense that I discussed both with the [D]efendant and [Defendant's prior trial counsel] was the possible motive of the complaining witness in making the reports of the criminal acts.*

On cross-examination of trial defense counsel, the following exchange took place:

[DEFENSE COUNSEL]: December 24, 1999, you visited [Defendant] at OCCC, correct?

[TRIAL DEFENSE COUNSEL]: Yes.

Q: And March 3rd, 2000, page 3, also shows you visited [Defendant] at OCCC then?

A: Yes.

. . . .

Q: *So with those documented face-to-face conferences, can you tell us which one it was that you reviewed the medical records with him?*

A: *At the December 24th, '99 conference at OCCC, my recollection is at that first face-to-face conference, we discussed the medical records.*

. . . .

Q: And did you actually show the records to him?

A: That is my recollection, yes.

. . . .

Q: ... Did you again show him the medical records?

A: My recollection is that I showed him the medical records more—or again after that December 24th, '99 conference.

. . . .

Q: *So did you discuss with [Defendant] before his-any time before his plea about the evidentiary value of these medical records, the fact that there's no semen and no physical injury?*

A: *Yes, we did.* And as I mentioned before, he himself brought it up at that December 24th, '99 conference, the fact that the medical records showed no evidence of force.

(Emphases added.)

## B.

On September 12, 2002, the court issued its findings of fact, conclusions of law and order denying the petition for post-conviction relief. In the findings of fact, the court reiterated the claims asserted by Defendant:

19. [Defendant] raises two claims for relief:

a. Attorney Choy did not inform [Defendant] of the findings of the medical examination performed on Complainant; and

b. There was a purported violation of the plea agreement between [Defendant] and [the prosecution] because he was not "placed back" on parole.

As to claim one, the court found the testimony of defense trial counsel credible. The court made the following pertinent findings:

7. Attorney Choy kept a log of his contacts with [Defendant].

8. Attorney Choy first met [Defendant] on December 24, 1999 at the Oahu Community Correctional Center.

9. This court *finds credible the testimony of Attorney Choy that he reviewed the content[s] of the [Sex Abuse Treatment Center (SATC)] report—specifically that there was not physical evidence of forced entry or the presence of semen—with [Defendant]. The review of the SATC report took place during Attorney Choy's initial meeting with [Defendant] on December 24, 1999,* and during subsequent attorney—client meetings.

10. Based on [Defendant]'s own testimony, [Defendant] was informed of the findings of the medical examination through sources other than Attorney Choy.

. . . .

20. Based on [Defendant]'s own testimony at the August 14, 2002 hearing, [Defendant] changed his plea on March 15, 2000[,] not for reasons set forth in the petition, but because Complainant asked him to.

(Emphasis added.)

Relying on HRPP Rule 40(f),[13] the court entered the following relevant conclusions of law as to claim one:

2. This court granted [Defendant] a hearing on the first claim based on the conclusion that the claim alleged facts that

if proven would entitle [Defendant] to relief.

. . . .

5. To prevail on an ineffective assistance of counsel claim the defendant must demonstrate: 1) there were specific errors or omissions reflecting counsel's lack of skill, judgment, or diligence; and 2) that such errors or omissions resulted in either the withdrawal or substantial impairment of a potentially meritorious defense. *State v. Tafoya,* 91 Hawai'i 261, 267, 982 P.2d 890, 896 (1999).

6. [Defendant] has failed to demonstrate that there were specific errors or omissions reflecting a lack of skill, judgment or diligence on the part of Attorney Choy.

7. This court finds and concludes that the assistance provided to [Defendant] by Attorney Choy was within the range of competence demanded of attorneys in criminal cases.

The court accordingly dismissed the allegations as to the first claim.

As to the second claim, the court relied on HRPP Rule 40(g)(2). The court entered the following relevant conclusion of law as to that claim:

8. HRPP Rule 40(g)(2) states:

The court may dismiss a petition at any time upon finding the petition is patently frivolous, the issues have been previously raised and ruled upon, or the issues were waived.

In its written order, the court further "ordered that [the claim of] Petitioner not being placed on parole—which this court has previously ruled is patently frivolous and without a trace of support either in the record or from any other evidence by Petitioner—is denied without a hearing."

On September 19, 2002, Defendant appealed from the September 12, 2002 order deny-

---

**13.** HRPP Rule 40(f) provides in pertinent part as follows:

If a petition alleges facts that if proven would entitle the petitioner to relief, the court shall grant a hearing which may extend only to the issues raised in the petition or answer.

However, the court may deny a hearing if the petitioner's claim is patently frivolous and is without trace of support either in the record or from other evidence submitted by the petitioner.

ing post conviction relief in S.P.P. No. 00–0060.

## V.

On October 4, 2002, Defendant filed a motion to withdraw his guilty plea and set aside his conviction in Cr. No. 99–1602 (motion to withdraw guilty plea) pursuant to HRPP Rule 32(d).[14] Defendant alleged that the court (1) failed to establish on the record that Defendant and his counsel discussed potential defenses, (2) did not inform him of the consequences related to a convicted sex offender, *i.e.*, the registration requirement under HRS chapter 846E, and (3) did not inform him that "despite his one year mandatory minimum," the paroling authority, "would not permit his release unless and until he completes sex offender treatment."

Defendant's motion to withdraw the guilty plea was heard on December 13, 2002. On January 6, 2003, the court issued its order denying Defendant's motion to withdraw guilty plea (order). In the order, the court found that Defendant's trial attorney discussed with him his potential defenses[15] and concluded that HRS chapter 846E did not require the court to inform Defendant of the possible consequences of his plea.[16]

14. HRPP 32(d), permitting a defendant to move to withdraw a guilty plea or set aside a conviction, states in relevant part that "to correct manifest injustice the court after sentence shall set aside the judgment of conviction and permit the defendant to withdraw his plea."

15. The court appears to have based its denial of Defendant's motion to withdraw guilty plea on the court's previous ruling in the Rule 40 hearing where the parties argued the issue of ineffective assistance of counsel. As discussed *supra* Part IV, the court found the testimony of defense trial counsel credible, particularly with regard to Defendant's knowledge of the medical reports and the lack of physical evidence of the assault.

16. The court did not address Defendant's third allegation that the court failed to inform Defendant that, despite his one year mandatory minimum, the paroling authority would not permit his release until he completed sex offender treatment. Defendant did not appeal this issue.

17. HRPP Rule 11 requires that the court address Defendant in open court to determine if Defendant understands the charge against him and the effect of the plea agreement. Thus, HRPP Rule 11(c) provides that:

A.

As to Defendant's first ground, the court found as follows:

10. In denying Defendant's [Rule 40] petition this court found and concluded that Defendant's trial attorney discussed with him his potential defenses, specifically the lack of physical evidence to support the complainant's allegations of sexual assault.

Accordingly, the court denied the motion to withdraw guilty plea and concluded that:

7. The March 15, 2000 change of plea colloquy between this court and Defendant satisfied the requirements of HRPP [Rule] 11.[17]

B.

As to Defendant's second ground, the court observed that the current practice of trial courts is to inform defendants of the effect of a plea under HRS chapter 846E. Thus, the court found that:

5. On December 20, 2000, the administrative judges of the circuit courts of the State of Hawai'i, with the approval of the Chief Justice, promulgated a circuit court

The court shall not accept a plea of guilty ... without first addressing the defendant personally in open court and determining that he understands the following:
(1) the nature of the charge to which the plea is offered; and
(2) the maximum penalty provided by law, and the maximum sentence of extended term of imprisonment, which may be imposed for the offense to which the plea is offered; and
(3) that he has the right to plead not guilty, or to persist in that plea if it has already been made; and
(4) that if he pleads guilty ... there will not be further trial of any kind, so that by pleading guilty ... he waives the right to a trial[.]
HRPP Rule 11 also requires the court to insure that Defendant's plea is voluntary. Thus, HRPP Rule 11(d) states that:
The court shall not accept a plea of guilty ... without first addressing the defendant personally in open court and determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. The court shall also inquire as to whether the defendant's willingness to plead guilty ... results from any plea agreement.

criminal administrative order requiring trial courts, when applicable, to inform criminal defendants of the possible consequences of their plea under HRS [c]hapter 846E by using a sex offender addendum to the change of plea form.

However, the court concluded that there was no statutory requirement to advise Defendant of this consequence at the time of his change of plea on March 15, 2000. Thus, the court concluded in pertinent part that such advice did not vitiate the plea:

> 3. HRS chapter 802E requires the trial court to advise the criminal defendant of the possible immigration and naturalization consequences of that plea prior to acceptance of a plea of guilty or nolo contendere to any offense punishable as a crime under state law.
>
> 4. HRS chapter 846E codifies the Hawai'i Sex Offender Registration and Notification statutory scheme. Unlike chapter 802E, *the legislature did not include any express language in chapter 846E requiring the trial court to advise a criminal defendant of the possible consequences of a plea to a "sexually violent offense" or a "criminal offense against a victim who is a minor,"* as those terms are defined in HRS § 846E–1.
>
> 5. *Absent clear language from the legislature, this court declines the invitation to legislate the requirement that the trial court must inform a criminal defendant of the possible consequences of his plea under HRS chapter 846E.*
>
> 6. *At the time of the March 15, 2000 change of plea, there was no statute, rule or order that required trial courts to inform a criminal defendant entering [a] guilty plea to sex assault offenses about the consequences of that plea under HRS chapter 846E.*
>
> 7. The March 15, 2000 change of plea colloquy between this court and Defendant

satisfied the requirements of [HRPP] Rule 11.

(Emphases added.) Accordingly, the court denied the motion to withdraw guilty plea on this ground.

On January 16, 2003, Defendant appealed from the January 6, 2003 order denying Defendant's motion to withdraw guilty plea in Cr. No. 99–1602.

## VI.

On appeal, Defendant contends that with respect to his motion to withdraw guilty plea, (1) the court erred in its failure to verify that Defendant had discussed his potential defenses with counsel, and (2) the court erred in its failure to advise Defendant that he must register as a sex offender. With respect to Defendant's Rule 40 petition, Defendant contends that the court erred in finding that his claim relating to his parole was patently frivolous.

## VII.

 As to his motion to withdraw guilty plea under HRPP Rule 32(d), Defendant first argues that his motion should have been granted because at his March 15, 2000 change of plea hearing, the court did not ask him if he reviewed his available defenses with counsel. "[A] defendant is entitled to withdraw his or her guilty plea after imposition of a sentence only upon a showing of manifest injustice." [18] *Barnett v. State*, 91 Hawai'i 20, 28, 979 P.2d 1046, 1054 (1999) (quoting *State v. Nguyen*, 81 Hawai'i 279, 292, 916 P.2d 689, 702 (1996)). "Manifest injustice occurs when a defendant makes a plea involuntarily or without knowledge of the direct consequences of the plea." *Id.* (citations omitted).

 First, HRPP Rule 11 does not expressly require the court to verify whether a Defendant has discussed his potential defenses with counsel. It requires that

**18.** Defendant argues that based on *State v. Topasna*, 94 Hawai'i 444, 452, 16 P.3d 849, 857 (App.2000), the case should be reviewed under the right/wrong standard because the issue is based upon a constitutional inquiry of whether Defendant knowingly, intelligently and voluntarily entered his pleas of guilty. However, the

court in *Topasna* was asked to review a motion to withdraw a guilty plea made *before* the sentence was imposed. *Id.* at 451, 16 P.3d at 856. *Topasna* clearly stated that "when the motion to withdraw guilty plea is made after sentence is imposed, the 'manifest injustice' standard applies to the court's consideration of the motion." *Id.*

the court shall not accept a plea of guilty or nolo contendere without first addressing the defendant personally in open court and determining that he understands the following:

 (1) the nature of the charge to which the plea is offered; and

 (2) the maximum penalty provided by law, and the maximum sentence of extended term of imprisonment, which may be imposed for the offense to which the plea is offered; and

 (3) that he has the right to plead not guilty, or to persist in that plea if it has already been made; and

 (4) that if he pleads guilty or nolo contendere there will not be a further trial of any kind, so that by pleading guilty or nolo contendere he waives the right to a trial; and

 (5) that if he is not a citizen of the United States, a conviction of the offense for which he has been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States.

HRPP Rule 11(c) (2002). The rule ensures that a plea was voluntarily and knowingly entered. In the colloquy between the court and Defendant, the court asked Defendant whether he had discussed the guilty plea *fully with his attorney,* and whether he was satisfied with his attorney's advice. Defendant answered in the affirmative to both questions. "[T]here is no manifest injustice when the trial court has made an affirmative showing by an on-the-record colloquy between the court and the defendant wherein the defendant is shown to have a full understanding of what the plea of guilty connotes and its consequences." *State v. Cornelio,* 68 Haw. 644, 646–47, 727 P.2d 1125, 1126–27 (1986) (internal quotation marks and citations omitted).

■ Second, paragraph "3" of the guilty plea form signed by Defendant states that Defendant's lawyer "discussed with me ... the *possible* defenses which I might have." (Emphasis added.) Trial defense counsel testified at the Rule 40 petition hearing that (1) he had reviewed possible defenses with

Defendant stemming from the lack of physical evidence and (2) Defendant knew of the lack of physical evidence prior to the meeting at which this was first discussed. Defendant does not proffer any other "possible defenses." *See supra* Part IV.A. In light of the testimony and the court's determination that trial defense counsel was credible, the court's finding no. 10 that "Defendant's trial attorney discussed with [Defendant] his potential defenses" was not clearly erroneous. "A finding of fact is clearly erroneous when (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is nonetheless left with a definite and firm conviction that a mistake has been made." *State v. Okumura,* 78 Hawai'i 383, 392, 894 P.2d 80, 89 (1995) (citations and internal quotation marks omitted).

For the foregoing reasons, there is no merit to Defendant's claim that the court should have inquired as to whether counsel discussed potential defenses with Defendant. Inasmuch as the court found trial defense counsel had discussed possible defenses with Defendant prior to his plea, it cannot be said that Defendant made "a plea involuntarily or without knowledge of the direct consequences of the plea." *Barnett,* 91 Hawai'i at 28, 979 P.2d at 1054. Accordingly, the court did not err in denying Defendant's motion to withdraw guilty plea on this ground.

## VIII.

■■ Defendant next argues, in connection with HRPP Rule 32(d), that he should have been permitted to withdraw his plea because the court erred in failing to advise Defendant that he must register as a "sex offender." As related in the discussion above, "[m]anifest injustice occurs when a defendant makes a plea ... without knowledge of the *direct consequences* of the plea." *Nguyen,* 81 Hawai'i at 292, 916 P.2d at 702 (emphasis added). However, "[c]ourts need not inform defendants prior to accepting their guilty or nolo contendere pleas about every conceivable collateral effect that a conviction might have." *Barnett,* 91 Hawai'i at 28, 979 P.2d at 1054 (citations omitted).

Defendant argues that sex offender registration is a direct consequence and advisement is essential to a valid plea even if HRS chapter 846E does not expressly say so. As mentioned previously, the court stated in conclusion no. 4 that "[u]nlike chapter 802E,[19] the legislature did not include any express language in chapter 846E requiring the trial court to advise a criminal defendant of the possible consequences of a plea to a sexually violent offense' or a 'criminal offense against a victim who is a minor,' as those terms are defined in HRS § 846E–1."

### IX.

■■■ Whether the court's failure to inform Defendant of the applicable sex registration requirements, prior to his guilty plea, has caused Defendant a "manifest injustice" essentially turns on whether such registration requirements are "direct" or "collateral" consequences of his guilty plea. In describing the distinction between such terms, this court, explained that

*[a] direct consequence is one which has a definite, immediate and largely automatic effect on defendant's punishment.* Illustrations of collateral consequences are loss of the right to vote or travel abroad, loss of civil service employment, loss of a driver's license, loss of the right to possess firearms or an undesirable discharge from the Armed Services. *The failure to warn of such collateral consequences will not warrant vacating a plea because they are peculiar to the individual and generally result from the actions taken by agencies the court does not control.* Deportation is a collateral consequence of convictions because it is a result peculiar to the individual's personal circumstances and one not within the control of the court system.

*Nguyen,* 81 Hawai'i at 288, 916 P.2d at 698 (emphases added) (quoting *People v. Ford,*

86 N.Y.2d 397, 403, 633 N.Y.S.2d 270, 657 N.E.2d 265 (N.Y.1995)). In this regard, this court concluded that the deportation ramifications were "collateral consequence[s]" of defendant's guilty plea, and ultimately concluded that the court had no duty to warn the defendant of such consequences.[20] *Id.* at 292, 916 P.2d at 702. Accordingly, this court affirmed the circuit court's denial of the defendant's motion to withdraw his "no contest" plea. *Id.; see In re Resendiz,* 25 Cal.4th 230, 105 Cal.Rptr.2d 431, 19 P.3d 1171, 1179 (2001) (explaining that "collateral" consequences of a plea do not "inexorably follow" from a conviction of the offense involved in the plea).

As discussed, HRPP Rule 11(c) requires that a "court shall not accept a plea of guilty ... without first" determining that the defendant understands, *inter alia,* "the maximum *penalty* provided by law, *and the maximum sentence.*" (Emphases added.) Accordingly, although sex offender registration is triggered upon one's conviction, it does not have a " 'definite, immediate and largely automatic effect on [a] defendant's *punishment.'* " *Nguyen,* 81 Hawai'i at 288, 916 P.2d at 698 (quoting *Ford,* 86 N.Y.2d at 397, 633 N.Y.S.2d 270, 657 N.E.2d 265). Instead, the registration requirements of HRS chapter 846E are similar to the restrictions on the right to travel or the loss of a driver's license that are collateral consequences of a guilty plea. *See State v. Guidry,* 105 Hawai'i 222, 227, 96 P.3d 242, 247 (2004) (explaining that sex offenders "must register in person with the county chief of police whenever s/he *intends to remain in another jurisdiction for more than ten days* " and convicted sex offenders are "required to ... notify the attorney general in writing of any *change in name, employment, or residence address within three working days of the change* " (emphases added)).

---

**19.** HRS chapter 802E requires the trial court to advise the criminal defendant of the possible immigration and naturalization consequences of a plea prior to acceptance of a plea of guilty or nolo contendere to any offense punishable as a crime under state law. HRS § 802E–2 (1993).

**20.** The decision in *Nguyen* was based on the "relevant law" at the time of the plea at issue in that case. *Nguyen,* 81 Hawai'i at 289, 292, 916

P.2d at 699, 702. The court explained that under HRS § 802E–3, which was not in effect at the time of Nguyen's plea agreement, if a court fails to advise the defendant of the possible consequence of deportation prior to the entry of a plea agreement, the court shall "permit the defendant to withdraw the plea." *Id.* at 289 n. 7, 916 P.2d at 699 n. 7 (quoting HRS § 802E–3).

Moreover, sex offender registration requirements generally involve "actions taken by agencies the court does not control." *Nguyen*, 81 Hawai'i at 288, 916 P.2d at 698. *See also Sanchez v. United States*, 572 F.2d 210, 211 (9th Cir.1977) (explaining that revocation of parole is collateral and not a direct consequence of guilty plea because "parole board has authority separate and distinct from that of the sentencing judge"); *In re Resendiz*, 105 Cal.Rptr.2d 431, 19 P.3d at 1179 (explaining that the deportation consequences do not "inexorably follow" from a conviction in that deportation "can be instituted only upon the order of the Attorney General" (citations and internal quotation marks omitted)). Pursuant to HRS § 846E–3(a), the attorney general and county police departments, both agencies not controlled by the judiciary, are required to administer the registration of convicted persons and the release of information to other law enforcement and government agencies and to the public.

In this regard, sex offender registration requirements are "collateral" consequences of Defendant's conviction, and, thus, the court had no duty to warn Defendant, prior to pleading guilty, about the collateral consequences of conviction flowing from sex offender registration requirements. *Cf. Nguyen*, 81 Hawai'i at 287, 916 P.2d at 697 (holding that the court had no duty to warn defendants about the possibility of deportation as a collateral consequence of conviction); *State v. Bollig*, 232 Wis.2d 561, 605 N.W.2d 199, 210 (2000) (holding that since sex offender registration was not a direct consequence of the plea, the failure to warn of such a requirement did not render the pleas unknowing or unintelligent); *see Commonwealth of Pennsylvania v. Leidig*, 850 A.2d 743, 747 (Pa.Super.Ct.2004) (concluding that the Pennsylvania Supreme Court determined that sex offender registration and notification requirements "do not constitute criminal punishment," and, thus, such requirements are collateral consequences of the plea). Accordingly, the failure to warn of such collateral consequences does not warrant vacating Defendant's plea of guilty.[21] *Nguyen*, 81 Hawai'i at 287, 916 P.2d at 697.

## X.

With respect to his Rule 40 petition, Defendant first argues that a "full and fair hearing should have included the grounds summarily rejected." However, in his argument, Defendant addresses only the claim that "his parole was wrongfully revoked and the prosecution breached its plea agreement."

As to this claim, it is not clear as to what Defendant is arguing concerning the wrongful revocation of his parole.[22] Defendant apparently understood the phrases "concurrently with any other sentence being served" and "stand silent before the [paroling authority]" to mean that "the sentence in [Cr. No.] 99–1602 would allow him to remain on parole in [the] Third Circuit Criminal No. 93–0167K." However, the reference to Cr. 93–0167K was not raised in the motion to withdraw or the Rule 40 petition below. "[T]he general rule is that an issue which was not raised in the lower court will not be considered on appeal." *Stanley v. State*, 76 Hawai'i 446, 451, 879 P.2d 551, 556 (1994). Thus, the issue regarding parole and whether it was wrongfully revoked as to Cr. No. 93–0167K will not be considered on appeal.

21. *But see In re Resendiz*, 105 Cal.Rptr.2d 431, 19 P.3d at 1179 n. 7 (explaining that "sex offender registration" requirements are " 'direct' consequences of a guilty plea"); *Palmer v. State*, 118 Nev. 823, 59 P.3d 1192, 1194 (2002) (holding that the lifetime supervision requirement imposed on sex offenders "is a direct consequence of a guilty plea" because it enlarges or increases the punishment for charged offense); *People v. McClellan*, 6 Cal.4th 367, 24 Cal.Rptr.2d 739, 862 P.2d 739, 748–49 (1993) (concluding that "the trial court, in advising defendant of the direct consequences of his guilty plea, should have informed him of the [sex offender] registration requirement[,]" but ultimately holding that the defendant was "not entitled to relief because" *inter alia*, "he failed at the sentencing hearing to object to the imposition of the registration requirement").

22. Similarly, the prosecution does not understand Defendant's claim that his parole was wrongfully revoked and notes that Defendant's "parole status [in Cr. No. 93–0167K] at the time of his plea in this matter does not appear to be part of this record."

■ Second, as to the prosecution breaching its plea agreement, Defendant merely states in his petition that "[t]he [prosecution] violated the plea agreement by not continuing parole pursuant to Rule 11 Deal" and Defendant "was told parole would be continued, yet it was revoked." Both Defendant's purported misunderstanding that he would remain on parole in the third circuit Cr. No. 93–0167K case and his assertion that he was told parole would be continued pursuant to the plea agreement are belied by (1) the March 15, 2000 plea colloquy between Defendant and the court, in which there was no mention of parole, either generally or with respect to Cr. No. 93–0167K, and (2) the written plea agreement itself which said nothing of parole.

Defendant maintains that the foregoing "means he misapprehended the repeat offender sentencing under HRS § 706–606.5 and the requirement of an indeterminate 10–year sentence ontop [sic] of the mandatory one year in Counts [VI] and [VIII]." Thus, he asserts that "there is at least a colorable claim [of] whether [D]efendant was properly advised by counsel and/or the court as to the effect of his plea, given the interplay between a mandatory minimum sentence and maximum indeterminate sentence, along with the paroling authority's prerogative under HRS § 706–669 to set a minimum in excess of that ordered by the [c]ourt."

■ As to whether a colorable claim has been asserted, this court has previously stated:

> To establish a colorable claim, the allegations of the petition must show that if taken as true the facts alleged would change the verdict, however a petitioner's conclusions need not be regarded as true. *Where examination of the record of the trial court proceedings indicates that the petitioner's allegations show no colorable claim, it is not error to deny the petition without a hearing.* The question on appeal of a denial of a Rule 40 petition without a hearing is whether the trial record indicates that [p]etitioner's application for relief made such a showing of a colorable claim as to require a hearing before the lower court.

*Dan v. State,* 76 Hawai'i 423, 427, 879 P.2d 528, 532 (1994) (emphasis added). But Defendant has not alleged any *facts* to indicate that either the proceedings or the pleadings were misleading.

Moreover, the record does not "show[ ] . . . a colorable claim." The plea agreement as it related to Counts VI and VIII contained two separate provisions: that the prosecution agreed (1) in item 3, to a *reduced* mandatory minimum term of one year; and (2) "further" in item 6, to stand silent before the paroling authority regarding the setting of a "mandatory minimum" term. At the March 15, 2000 plea hearing, Defendant acknowledged he had discussed the plea agreement "fully" before he signed the plea document.

It should be noted first that the March 15, 2000 guilty plea form signed by Defendant acknowledged that Defendant may have to serve a mandatory minimum term of imprisonment without possibility of parole. Paragraph 7 of that form states:

> My lawyer has told me about the possible maximum indeterminate sentence indicated above for my offense. He also explained to me the possibility of my indeterminate maximum term of imprisonment being extended and explained that I *may have to serve a mandatory minimum term of imprisonment without possibility of parole.*

(Emphasis added.) Second, attachment 2 to the guilty plea form set forth the prosecution's agreement in item 3 to *"reduced* mandatory minimum term[s] on Counts [VI and VIII] of one year" (emphasis added), as the court eventually imposed pursuant to the prosecution's motion for repeat offender sentencing.

Third, at the March 15, 2000 plea hearing, the prosecution indicated in consonance with item 6 of the plea agreement that it would not take a position when the paroling authority "set the minimum term of incarceration." The prosecution stated that pursuant to the plea agreement, "Defendant will be sentenced to concurrent terms of ten years incarceration. Both parties will stipulate to a mandatory minimum one-year term of incarceration for those open ten terms." Further,

the prosecution agreed to *"remain silent[ ] before the [paroling authority] when the [p]aroling [a]uthority is to set the minimum term of incarceration for the [D]efendant,"* thus indicating that the minimum term would be set by the paroling authority. (Emphasis added.)

Fourth, the motion for sentencing of repeat offender filed by the prosecution on March 24, 2000, expressly referred to the fact that a plea agreement had been put in place to reduce Defendant's repeat offender sentence for Counts VI and VIII, to one year. Defendant filed no opposition to this motion. Defendant was present at the June 1, 2000 sentencing hearing. At the hearing, there was no dispute as to the applicability of the repeat offender statute. Furthermore, trial counsel clearly requested "that pursuant to [the] agreement there be a reduced mandatory minimum on Counts [VI] and [VIII] of one year." In response to the prosecution's motion and this request, the court granted the motion for repeat offender status and imposed as a sentence "as to Counts [VI] and [VIII], *ten years each with a reduced mandatory minimum term of one year pursuant to the plea agreement."* (Emphasis added.) It was plain then that the reduced one year term referred to the repeat offender motion.

Fifth, the record also discloses that on September 14, 2000, the paroling authority set the minimum terms of five years for each of Counts VI and VIII and noted a maximum sentence of ten years as to each count. There is no contention that the prosecution did not "remain silent" before the paroling authority, as agreed to in the plea agreement.

Finally, Defendant confirmed he understood the English language and he was informed of the possible maximum sentences. Under the circumstances, Defendant has not alleged "facts" which would entitle him to resentencing. The record of the court proceedings fails to support a colorable claim that he misunderstood "the effect of [his guilty] plea." Thus, the court did not err in finding Defendant's Rule 40 claim relating to his parole was patently frivolous and in denying Defendant's second Rule 40 claim without a hearing.

## XI.

Accordingly, for the reasons discussed herein, the court's January 6, 2003 findings of fact, conclusions of law, and order denying Defendant's motion for withdrawal of his guilty plea in Cr. No. 99–1602 and its September 12, 2002 findings of fact, conclusions of law and order denying Defendant's petition for post-conviction relief in S.P.P. No. 00–0060, are affirmed.

